JESSIE L. AKINS, APPELLANT, V.
HAPPY HOUR, INC., ET AL., APPELLEES.

306 N.W.2d 914

Filed June 19, 1981.   No. 43765.

Robert C. Wester of Schirber Law Offices, P.C., for appellant.

Hensen & Engles, P.C., for appellee Happy Hour.

Paul L. Douglas, Attorney General, and John R. Thompson for appellee State.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is a workmen's compensation case involving an award against the Second Injury Fund.

The plaintiff was born January 28, 1926. He has a fifth grade education. He lost his left arm at the elbow in an automobile accident in 1952. His employer made arrangements for him to continue working after the automobile accident until the plant was later closed. Thereafter plaintiff worked in various restaurants and bars until 1964 when he purchased the Happy Hour lounge in Omaha, Nebraska. In 1976 he sold the lounge and was retained by the purchaser as an employee with his main duties consisting of running the kitchen and occasionally the bar.

On August 17, 1978, plaintiff sustained a severe cut between the thumb and index finger of his right hand while he was washing dishes. He underwent surgery on two occasions, but the severed tendon did not knit. The stipulated medical testimony is that the second injury resulted in a 45 to 55 percent disability of the thumb, which translates to a 10 to 12 percent disability of the body as a whole. The total physical disability suffered from the combined injuries is a 62 percent permanent disability of the body as a whole.

Plaintiff returned to work in January 1979 and worked until April 1979 when the lounge was closed. Between April 1979 and July 1979, the plaintiff sought employment and applied to between 25 and 30 restaurants but was unsuccessful. In July 1979 plaintiff ultimately obtained a job at a Howard Johnson restaurant, running the kitchen on the midnight shift. Plaintiff is unable to open jars, open the freezer door,

clean the meat slicer, or pick up small objects. Nevertheless, plaintiff has been able to retain his job at Howard Johnson's with some assistance from other employees, and was earning as much or more than he was earning at the time of the injury to his thumb.

The Workmen's Compensation Court, at the initial hearing, found that the second injury resulted in a permanent partial disability to the plaintiff's right thumb, which, combined with the loss of his left arm in the prior accident, resulted in a 59 percent permanent partial disability to the body as a whole, and that plaintiff had suffered a substantially greater disability than that which would have resulted from the second injury considered alone and of itself. The court awarded plaintiff a 12 percent disability to the body as a whole for the second injury alone against the employer and its insurance company, and 47 percent permanent partial disability to the body as a whole against the Second Injury Fund. On rehearing the Workmen's Compensation Court found that the plaintiff had failed to prove that he had suffered a substantially greater disability from the combined disabilities than that which would have resulted from the second injury to his thumb considered alone and of itself. The court therefore modified the award by awarding the plaintiff permanent partial disability for the injury to his right thumb against the employer and its insurance carrier and dismissed his petition as to the Second Injury Fund. Plaintiff has appealed.

The relevant statute is Neb. Rev. Stat. § 48-128 (Reissue 1978). The relevant portion of that statute provides: "If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his obtaining employment or obtaining re-employment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional

permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself; and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability, and for the additional disability the employee shall be compensated out of a special trust fund created for that purpose, which sum so set aside shall be known as the Second Injury Fund."

The Workmen's Compensation Court, on rehearing, found that the plaintiff had failed to prove that he had suffered a substantially greater disability than that which would have resulted from the last injury considered alone and of itself, because the evidence showed that the plaintiff had returned to work as a cook and was earning as much as, if not more than, he was earning at the time of the injury.

Disability under the Workmen's Compensation Act is defined in terms of employability and earning capacity rather than in terms of loss of bodily functions. *Johnson v. Village of Winnebago*, 197 Neb. 845, 251 N.W.2d 176 (1977).

"Earning power," as used in Neb. Rev. Stat. § 48-121(2) (Reissue 1978), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted. If, after injury, an employee receives the same or higher wages than before injury, it is indicative, although not conclusive, of the fact that his earning power has not been impaired. *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 288 N.W.2d 482 (1980).

While it was entirely proper for the Workmen's Compensation Court to consider the wages the plaintiff received after the injury, the court, on rehearing, disregarded the evidence which established a reduction in the plaintiff's earning power and employability. The evidence established not only many attempts to secure employment without success but also established that at least one employer did not believe the plaintiff was capable of performing the job of cook and that other employees would have to carry part of his employment load. When the plaintiff finally found a job it was on the graveyard shift, the only one he could handle due to his injuries. It is apparent that plaintiff's employability with his combined disabilities is substantially less than it would have been if he had only the injury to his thumb.

The evidence established a substantial reduction in the plaintiff's capacity to perform the tasks of his employment under his combined disabilities compared with his capacity to perform the tasks of his employment if he had suffered only the injury to his thumb. The evidence also established that plaintiff is unable to perform his job without help to compensate for his injuries. It is also obvious that plaintiff's ability to hold a job has been substantially reduced. The fact that plaintiff has made extraordinary efforts to overcome his handicap or that an employer has been generous in employing a handicapped individual ought not to destroy his right to benefits under the Workmen's Compensation Act.

Under previous versions of § 48-128 which limited recovery against the Second Injury Fund to cases of permanent total disability, this court has applied the rule of construction that the Workmen's Compensation Act is to be liberally construed so that its beneficent purposes may not be thwarted by technical refinement of interpretation. Section 48-128 was amended in 1971 to provide for recovery against the Second Injury Fund in cases of partial as well as total disability. In cases prior

to that amendment we held that an employee who has permanent total disability as a result of a combination of injuries sustained in separate accidents is entitled to compensation out of the Second Injury Fund even though the injuries sustained in the separate accidents were schedule injuries which would otherwise be compensated under Neb. Rev. Stat. § 48-121(3) (Reissue 1978). See, *Franzen v. Blakley*, 155 Neb. 621, 52 N.W.2d 833 (1952); *Camp v. Blount Bros. Corp.*, 195 Neb. 459, 238 N.W.2d 634 (1976). Both cases hold that the purpose of § 48-128 is not to provide compensation for the previous disability but to provide compensation for permanent total disability resulting from a *combination* of the previous fact condition with a compensable injury. In *Camp* we said: "It is the previous fact condition combined with a second compensable injury causing permanent total disability in fact that establishes the right of the employee to compensation from the Second Injury Fund." *Id.* at 465, 238 N.W.2d at 638.

The present language of § 48-128 extends the liability of the Second Injury Fund to permanent partial disability as well as permanent total disability wherever the percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury considered alone and of itself.

In effect, the State contends that the Second Injury Fund should be liable only for the increased disability caused by, but not including, the prior disability. The specific language of the statute and express policy of the Workmen's Compensation Act are contrary to that contention. Although workmen's compensation statutes differ in their precise terms, the rule expressed in the great majority of such statutes is that the Second Injury Fund is liable for the difference between the compensation that would have been payable for the second injury alone and the compensation payable for the combined injuries. See 2 Larson, Workmen's Compensation Law § 59.34(a) (1981). The specific language of § 48-128

clearly fits that statutory pattern.

The parties indicate considerable confusion as to the provision of a portion of § 48-128 requiring the employer to establish, by written records, that the employer had knowledge of the preexisting disability at the time the employee was hired. The language was taken directly from the statutes of another state in which the procedures provided for full recovery by the employee against the employer and then required the employer to take action against the Second Injury Fund to reduce the employer's liability. The section does not fit the Nebraska statutory pattern, but it is unnecessary for us to pass upon the issue here because the evidence is completely undisputed that the employer did have actual knowledge of the preexisting disability at the time the plaintiff was employed. The Workmen's Compensation Court, at the initial hearing, found that the statutory provision for written records did not come into play where the injury and disability is as obvious as the amputation of an arm.

While the findings of fact of the Workmen's Compensation Court on rehearing will not ordinarily be set aside unless clearly wrong, this court may reverse or modify an award of the Workmen's Compensation Court where there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or the findings of fact by the court do not support the order or award. See Neb. Rev. Stat. § 48-185 (Reissue 1978).

The finding of the Workmen's Compensation Court after rehearing that the degree or percentage of disability caused by the combined disabilities was not substantially greater than that which would have resulted from the last injury considered alone and of itself is not supported by the evidence. The initial award of the Workmen's Compensation Court is supported by the evidence and should not have been modified.

In view of the disposition made it is unnecessary to consider the plaintiff's remaining assignments of error.

The decision of the Workmen's Compensation Court on rehearing is reversed and remanded with directions to reinstate the initial award in the Workmen's Compensation Court. Plaintiff is allowed an attorney fee of $1,000 for services of his attorney in this court.

REVERSED AND REMANDED WITH DIRECTIONS.

HASTINGS, J., dissenting.

I respectfully dissent from the majority opinion. There is no authority of which I am aware which permits the translation of a scheduled disability into a disability of the body as a whole where as here the effect of the injury is the usual and natural one expected. *Broderson v. Federal Chemical Co.*, 199 Neb. 278, 258 N.W.2d 137 (1977); *Guerin v. Insurance Co. of North America*, 183 Neb. 30, 157 N.W.2d 779 (1968). Had the two injuries arisen out of the same accident, the plaintiff would have been limited in his recovery to the two scheduled disabilities. Neb. Rev. Stat. § 48-121(3) (Reissue 1978). The character of the injury is not changed by Neb. Rev. Stat. § 48-128 (Reissue 1978).

I am authorized to state that BOSLAUGH, J., joins in this dissent.