SCHWAN'S SALES ENTEREPRISES, INC., AND LIBERTY MUTUAL
INSURANCE COMPANY, APPELLANTS, V. ROBERT J. HITZ AND
STATE OF NEBRASKA, SECOND INJURY FUND, APPELLEES.

640 N.W.2d 15

Filed March 1, 2002.   No. S-01-494.

Thomas D. Wulff, of Welch, White & Wulff, for appellants.

Don Stenberg, Attorney General, and Hobert B. Rupe for appellee State of Nebraska, Second Injury Fund.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Schwan's Sales Enterprises, Inc. (Schwan's), and Liberty Mutual Insurance Company (Liberty Mutual) appeal from a decision of a review panel of the Nebraska Workers' Compensation Court determining that the State of Nebraska, Second Injury Fund, was not liable to Robert J. Hitz, who was injured in the course of his employment with Schwan's. The trial judge determined that the Second Injury Fund was liable because Hitz had an amputation below the right knee at the time he was hired by Schwan's and Schwan's had actual knowledge of the amputation. The review panel reversed because Schwan's did not make a

written record of the amputation in accordance with Neb. Rev. Stat. § 48-128(2) (Reissue 1993), and the amputation was not obvious. Because it is undisputed that Schwan's had actual knowledge of the amputation, we reverse the review panel's order determining that the Second Injury Fund was not liable.

## BACKGROUND

The facts of this case are undisputed. In 1990, Hitz' right leg was amputated below the knee, and he has worn a prosthesis since that time. In 1995, Hitz applied to Schwan's for a position as a sales route driver. Hitz initially interviewed with Byron R. Lane, a sales manager. Lane observed that Hitz walked with a slight limp, and Hitz explained to him that his leg was amputated below the knee. Lane asked Hitz if he could physically perform the job, and Hitz assured him that he could. Lane also checked to see if Hitz' condition would prevent him from driving under federal Department of Transportation guidelines and found that it did not. In his deposition, Lane stated that he never actually observed Hitz' prosthesis.

After the initial interview, Lane and Robert J. Ludewig, a division manager for Schwan's, met with Hitz at Hitz' home. In his deposition, Ludewig stated that at the time of the meeting, he was aware that Hitz wore a prosthetic limb. The record indicates that although he was aware of it, Ludewig did not actually see the prosthesis. Hitz was hired by Schwan's in November 1995. The record shows that Schwan's did not make a written record in accordance with § 48-128(2), documenting that Hitz had a below-the-knee amputation.

On December 8, 1995, Hitz was injured when he fell while adding oil to the truck that he drove for Schwan's. As a result of the fall, he fractured his right femur and several surgeries were performed on his right leg. Hitz was later diagnosed with reflex sympathetic dystrophy. In June 1998, Dr. Michael H. McGuire, an orthopedic surgeon who treated Hitz, stated that it was unlikely that Hitz would ever regain functional use of his right lower extremity. In addition, he stated that Hitz had reached maximum medical improvement and that he had a disorder that produced a 40-percent whole person impairment and a 100-percent lower extremity impairment. In November 1998, Dr. Michael T.

O'Neil, another orthopedic surgeon who treated Hitz, stated that Hitz was 100 percent permanently disabled. O'Neil stated that Hitz would not have sustained the type of fracture that he did if he had not had a below-the-knee amputation at the time he fell. Hitz has not worked since the day of his accident.

Schwan's and Liberty Mutual brought suit in the Workers' Compensation Court against Hitz and the Second Injury Fund seeking a determination of the rights and liabilities of the parties. The trial judge concluded that Schwan's and Liberty Mutual were liable for all of Hitz' temporary total disability payments and his permanent partial disability payments as a result of his member impairment. The trial judge determined that the Second Injury Fund was liable for all of Hitz' permanent partial disability payments, and the Second Injury Fund sought review. In a two-to-one decision, the review panel reversed, determining that the Second Injury Fund was not liable for any of Hitz' workers' compensation payments because Schwan's did not make a written record to document that Hitz was an amputee. Applying this court's decision in *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981), the review panel concluded that actual knowledge of Hitz' amputation could not support liability on the part of the Second Injury Fund because the amputation was not "obvious." Schwan's and Liberty Mutual appeal.

## ASSIGNMENTS OF ERROR

Schwan's and Liberty Mutual assign, rephrased, that the review panel erred in reversing the trial judge's findings regarding the liability of the Second Injury Fund.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of fact of the single judge who conducted the original hearing; the findings of fact of the single judge will not be disturbed on appeal unless clearly wrong. *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 635 N.W.2d 439 (2001).

## ANALYSIS

Schwan's and Liberty Mutual contend that the Second Injury Fund is liable for Hitz' permanent partial disability. The Second Injury Fund, however, contends that because Hitz' amputation was not obvious, Schwan's was required to document the condition with written records.

At the time of Hitz' date of hire, § 48-128(2), now codified at § 48-128(1)(b), provided:

> In order to qualify under this section, the employer must establish by written records that the employer had knowledge of the preexisting permanent partial disability at the time that the employee was hired or at the time the employee was retained in employment after the employer acquired such knowledge.

■ Both parties rely on our decision in *Akins, supra*. In *Akins*, an employee's arm was amputated at the elbow. The employee was later injured in the course of his employment. Although the employer did not keep written records documenting the employee's injury, the compensation court found that the written records provision was inapplicable to a case where the injury and disability were so obvious as the amputation of an arm. We affirmed and held that when the evidence is undisputed that an employer did have actual knowledge of an obvious preexisting permanent partial disability—an amputation—at the time the worker was employed, the written records provision of § 48-128 does not apply.

In this case, the Second Injury Fund argues that because Hitz wore a prosthesis, his amputation was not obvious, thus necessitating documentation by written records under *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981). We do not read *Akins* so narrowly. Our holding in *Akins* focused on the fact

that there was no factual dispute over whether the employer had actual knowledge of the employee's amputation. As in *Akins*, in this case, there is no dispute that Hitz had an amputation resulting in an obvious limp the day he was hired and that Schwan's had actual knowledge of the permanent partial disability. Lane stated that he discussed the amputation with Hitz and that he checked to see if Hitz' condition would prevent him from driving under federal Department of Transportation guidelines. Likewise, Ludewig stated that he was aware of the amputation. That Hitz wore a prosthesis, thus making his amputation less noticeable, does not mean his employer lacked actual knowledge.

We determine that the findings of the trial judge were not clearly wrong and conclude that the review panel erred in reversing the decision of the trial judge. Accordingly, we reverse the review panel's order determining that the Second Injury Fund was not liable.

REVERSED AND REMANDED.