RICHARD T. KINGSLAN, APPELLEE, V. JENSEN TIRE CO. ET AL.,
APPELLANTS.
417 N.W.2d 164

Filed December 31, 1987.   No. 87-022.

Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

Jeannine L. Prince and Robert A. Laughlin, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

In this workers' compensation case, defendants appeal from a three-judge panel order, with one judge dissenting, awarding plaintiff $200 per week temporary total disability for 19 $2/7$ weeks and, thereafter, $200 a week for 22 $1/2$ weeks for a 10-percent permanent partial disability to the left arm; vocational rehabilitation services; and a $250 attorney fee. Some credits were allowed to defendants.

The accident dislocated plaintiff's shoulder. Prior thereto, he had a history of a recurring dislocating left shoulder that sometimes required medical attention. At other times he was able to reduce the dislocation himself.

The parties agree that a finding with regard to causation of

an injury is one for determination by the fact finder; it will not be set aside unless clearly wrong. *Ceco Corp. v. Crocker*, 216 Neb. 692, 345 N.W.2d 20 (1984).

Defendants assign three errors: (1) the finding that the plaintiff's medical treatment, surgery, and disability are causally related to his accident of July 25, 1984; (2) the finding that a recurrent dislocated shoulder is an objective injury not requiring expert medical testimony; and (3) the finding that the defendants should pay to the plaintiff an attorney fee.

There is no real conflict in the following. Plaintiff, Richard T. Kingslan, age 26 years, was first employed as a mechanic by defendant Jensen Tire Co. (Jensen) in March 1984. On July 25, 1984, while plaintiff was balancing a tire, a part of the balancing assembly loosened, striking plaintiff and forcing plaintiff's left arm to be thrown above his head, dislocating his left shoulder. Three days later, plaintiff consulted his physician, Dr. Daniel Mergens, Omaha, Nebraska, who referred him to Dr. James W. Dinsmore, Omaha, Nebraska, an orthopedic surgeon. Dr. Dinsmore testified that he first examined plaintiff in August of 1984 "because of a recurrent dislocating left shoulder." Dr. Dinsmore made reference to the July 25 dislocation neither in his notes nor in his testimony. Prior to the July 25 incident, plaintiff had suffered two major dislocations of his left shoulder that required emergency medical attention by Dr. Mergens: the first on Christmas Day 1982, while wrestling with a relative, and the second about 1 year later, while he was employed as a mechanic at Huber Chevrolet, Omaha, Nebraska. After the Huber dislocation and prior to July 25, 1984, plaintiff also suffered several other minor dislocations that he reduced himself. Plaintiff explained that after the Huber dislocation, he began experiencing more frequent minor dislocations. When he raised his arm, he would sometimes feel his arm slipping out of joint; usually, when he continued his work, the arm would slip back into the joint. Between July 25 and September 24, 1984, plaintiff suffered four or five other minor left shoulder dislocations that he reduced himself, one of which was reported by telephone to Dr. Dinsmore on September 19. Plaintiff quit work on September 24, 1984. He was discharged by Jensen on December 10, 1984.

Dr. Dinsmore testified by deposition that he first examined plaintiff in August 1984, and thereafter, on September 25, 1984, he performed a Bristow stabilization surgery procedure on plaintiff's left shoulder. One year later, a second surgical operation was performed to remove a screw which had worked loose from the bone. Dr. Dinsmore estimated that the permanent impairment to the shoulder was approximately 10 percent. Dr. Dinsmore released plaintiff to return to work in February 1985. Defendants presented no evidence.

Defendants paid plaintiff the ordered awards up to February 24, 1986, together with $5,574.26 medical and hospital expenses.

From the evidence and the panel's findings, it is established that prior to July 25, 1984, plaintiff had suffered several recurrent dislocations of his left shoulder which were caused by a preexisting condition of his physical body structure and that on July 25, 1984, while plaintiff was employed by defendant Jensen, he was involved in an accident (dislocation of his left shoulder), Neb. Rev. Stat. § 48-151(2) (Cum. Supp. 1986), in the course of that employment, § 48-151(4).

The burden of proof is upon the plaintiff to show by a preponderance of the evidence that the disability sustained was caused by or related to the accident and was not the result of the normal progression of plaintiff's preexisting condition. *Narduzzo v. Sunderland Bros.*, 212 Neb. 852, 326 N.W.2d 673 (1982); *Aguallo v. Western Potato, Inc.*, 208 Neb. 66, 302 N.W.2d 41 (1981); *Taylor v. Benton*, 205 Neb. 203, 286 N.W.2d 755 (1980). "In order to sustain the burden of proving an accident as well as causation, the evidence presented by the claimant must be definite and certain to warrant a compensation award." *Masters v. Iowa Beef Processors*, 220 Neb. 835, 838, 374 N.W.2d 21, 23 (1985). "[T]he presence of a preexisting condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment." *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 584, 400 N.W.2d 244, 248 (1987).

In reviewing workmen's compensation cases the Supreme Court is not free to weigh the facts anew. The Supreme Court's standard of review accords to the

findings of the compensation court the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong.

An order of the compensation court may be reversed or set aside with respect to the evidence only where there is not sufficient evidence in the record to warrant the order or judgment. In testing the sufficiency of the evidence to support the findings, every controverted fact must be resolved in favor of the successful party and he should have the benefit of every inference that can be drawn therefrom. Such findings on rehearing will not be set aside on appeal unless clearly wrong.

(Syllabi of the court.) *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). However, "where there is not sufficient competent evidence in the record to warrant the making of the award, or the findings of fact made by the Workmen's Compensation Court do not support the award, this court must modify, reverse, or set aside the award." *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 541, 308 N.W.2d 734, 736 (1981).

We first consider defendants' second assigned error, which we conclude to be well taken. It relates to the second sentence of paragraph VIII of the panel's order, "A dislocated shoulder is an objective injury not requiring expert testimony as to causation."

"There shall be no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment." § 48-151(2).

[U]nless the character of the injury is objective, that is, where its nature and effect are plainly apparent, then it is a subjective condition necessitating expert testimony; and that *where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science.* Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. The employee must show by competent medical testimony the

causal connection between the alleged injury, the employment, and the disability.

(Emphasis supplied.) *Hamer v. Henry*, 215 Neb. 805, 809, 341 N.W.2d 322, 325 (1983); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981); *McCann v. Holy Sepulchre Cemetery Assn.*, 205 Neb. 444, 288 N.W.2d 45 (1980); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

Although an isolated incident of a dislocated shoulder might be an objective injury under circumstances where its nature and effect are plainly apparent, it is otherwise under the evidence in this record which shows that plaintiff had an unusual recurrent dislocating left shoulder that sometimes was self-reduced without debilitating effects. Expert scientific and/or medical evidence was required to show the nature and effect of the July 25 dislocation and to show its causal connection, if any, with plaintiff's employment, disability, and claims for medical services.

From a reading of the panel's order it is not clear whether or not the panel applied the rule in *Hamer*; however, defendants' claim does not rise to reversible error, since the evidence considered by the panel does include expert scientific and medical testimony relating to the issue of causation.

We turn to defendants' first assigned error related to causation and, particularly, the panel's reliance on a part of *Tilghman v. Mills*, 169 Neb. 665, 669-70, 100 N.W.2d 739, 743 (1960), which the panel cites: "It is sufficient to show that the injury and preexisting [condition] *combined to produce disability*, and it is not necessary to prove the injury accelerated or aggravated the disease, in order to satisfy the requirement . . . that the disability arose out of the employment." (Emphasis supplied.)

" '[A]rising out of' describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope or sphere of the employee's job." *Union Packing Co. v. Klauschie*, 210 Neb. 331, 336, 314 N.W.2d 25, 29 (1982).

The "combined" rule referred to in *Tilghman* has a long history in this jurisdiction. As early as 1922 this court, in

*Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246, 190 N.W. 578 (1922), considered a case where a piece of lumber struck Rengler's leg, causing a bruise. Rengler also suffered from syphilis, which caused the bruise to become ulcerated. The medical evidence established that the disease aggravated the wound, but without the wound there would have been no ulceration and resulting disability. In its analysis, the court said,

> The crucial question, then, is whether or not there is any causal connection between the trauma and the disability of appellee [Rengler]. If such disability is attributable only to the disease, that is the only proximate cause; if, however, the disability is the result of a combination of trauma and disease, the former is a part of the proximate cause.

*Id.* at 248, 190 N.W. at 579. The court then held that there was such a combination and that the disability was proximately caused by both his disease and his injury.

In 1944 this court, citing *Gilcrest*, announced this rule in *Yakal v. Henkle & Joyce Hardware Co.*, 145 Neb. 365, 370, 16 N.W.2d 531, 533 (1944): "To sustain an award in a workmen's compensation case, it is sufficient to show that an injury, resulting from an accident arising out of and in the course of the employment, and preexisting disease combined to produce disability." That rule was followed in *Sporcic v. Swift & Co.*, 149 Neb. 246, 30 N.W.2d 891 (1948). Later, in 1960, *Tilghman v. Mills, supra*, was decided, where the plaintiff had a preexisting congenital spondylolisthesis condition. He was injured in an auto accident while being transported to work by his employer; he received burns and recurring pains in his legs and back. There was great conflict in the medical evidence on whether the accident aggravated his preexisting condition, which was not resolved by the court; rather, the court found causation by applying *Yakal* and *Sporcic* and added, "[I]t is not necessary to prove that the injury accelerated or aggravated the disease, in order to satisfy the requirement of the statute that the disability arose out of the employment." 169 Neb. at 669-70, 100 N.W.2d at 743.

From the analysis in *Gilcrest*, plaintiff had the burden to prove that his disability was caused by more than his preexisting

condition; rather, that the July 25 injury (dislocation) combined with his preexisting condition to cause his claimed disability. This proof required expert medical testimony.

Dr. Dinsmore, the only medical expert presented, related details of the Bristow stabilization procedure, "which is what we do for recurrent dislocating shoulders." The Bristow procedure involves cutting off the tip of a bone called the coracoid process. This bone piece, and the muscle attached, is then attached by a screw to another bone approximately 3 centimeters below its original location. As a result, the muscle comes across the head of the humerus to keep the humerus from sliding out of its socket, thereby preventing further dislocations. Neither attorney asked, and Dr. Dinsmore did not opine, whether Kingslan's need for surgery was caused by the injury he sustained at Jensen.

Kingslan introduced into evidence a set of interrogatories he had answered at defendants' request. Included is a letter from Dr. Dinsmore to Kathleen Berg, a representative of Jensen's insurance company. In this letter, dated December 17, 1985, Dr. Dinsmore states, "Mr. Kingslan's problems started when he first dislocated his shoulder. He then developed a recurrent dislocating shoulder. It was following these recurrent episodes which precipitated the necessity for shoulder surgery." This is the only statement by the doctor which indicates his opinion as to the cause of Kingslan's need for the Bristow stabilization procedure.

Dr. Julian Baumel, an anatomy professor at Creighton University Medical School, also testified. He used colored slides and a skeleton to relate exactly how the Bristow stabilization procedure is performed.

Kingslan testified that his ability to work was not hindered until after the accident at Jensen. Kingslan stated that after the surgery he was shifted from his position as a mechanic to one as a salesman due to his slow work ability. Kingslan also offered exhibit 4, which shows his demotion at Jensen on August 20, 1984, but there is no indication that this demotion was due to inability to perform as a mechanic.

After considering all of the evidence, resolving controverted facts in favor of plaintiff together with inferences, we conclude

that plaintiff's evidence in support of causation was less than definite and certain and that he failed to sustain his burden to prove that the July 25 dislocation was more than a normal recurrence of a preexisting dislocating shoulder condition and to prove that his preexisting condition did combine with the July 25 dislocation to establish a causal connection with his employment, disability, and claims for medical and hospital expenses. The panel's award was clearly contrary to the evidence; it should be set aside and plaintiff's petition dismissed.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.