ALBERT WAYNE ELLIOTT, APPELLANT, V. MIDLANDS ANIMAL PRODUCTS, APPELLEE.

428 N.W.2d 920

Filed September 16, 1988.   No. 87-867.

David J. Cullan and Virginia L. Cullan, of Cullan & Cullan, for appellant.

Melvin C. Hansen and Allen J. Potts, of Hansen, Engles & Locher, P.C., for appellee.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and NORTON, D.J.

GRANT, J.

This is an appeal from a decision of a three-judge panel of the Workers' Compensation Court. The panel modified the judgment rendered by a single judge of the court. In his petition, filed June 16, 1986, plaintiff-appellant, Albert Wayne Elliott, alleged that "on or about the 23 day of April, 1982, the plaintiff sustained personal injury in an accident arising out of and in the course of the plaintiff's employment by the defendant [Midlands Animal Products]." Plaintiff further alleged that the injury sustained was a "[r]ight hand injury" and that the "accident and injury occurred in the following manner: Strain to right hand while boning meat." Defendant filed an answer in the compensation court admitting that plaintiff was its employee on the date in question and generally denying plaintiff's other allegations.

After rehearing on February 6, 1987, the panel found that plaintiff was entitled to payments for 166 $1/7$ weeks for temporary total disability and "in addition thereto the sum of $180.00 per week for 140 weeks for 80 per cent permanent partial disability to his right hand." The court also found that defendant was entitled to credits for payments it had made to the date of the rehearing.

The panel further found that defendant should pay Saint Joseph Center for Mental Health, $12,914; Mercy Hospital, $897; Saint Joseph Hospital, $896; and two doctors. The panel specifically found, "The bill of Eppley Chemical Dependency Unit is disallowed along with the bills of Dr. Subhash Bhatia; the mileage for visits to Dr. Bhatia is likewise disallowed." The panel ordered that the plaintiff was entitled to vocational

rehabilitation benefits, but did not make any permanent disability award to plaintiff for damages resulting from any "emotional disorder or depression."

Plaintiff appeals to this court, setting out four assignments of error, in that the panel erred (1) in allowing hospital bills but disallowing doctor bills and mileage for the same treatment; (2) in allowing one hospital bill but disallowing a later hospital bill for treatment of the same condition; (3) "in failing to determine Plaintiff's degree of impairment (disability) from his work related psychological problems and alcohol abuse where uncontradicted medical and vocational rehabilitation expert testimony established Plaintiff to be 80 to 90 percent disabled"; and (4) in making no allowance of benefits for loss of plaintiff's earning capacity.

Neb. Rev. Stat. § 48-185 (Cum. Supp. 1986) sets forth this court's standard of review for workers' compensation cases:

> The findings of fact made by the compensation court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

In *Clifford v. Harchelroad Chevrolet, ante* p. 78, 425 N.W.2d 331 (1988), we held that the findings of fact by the Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong.

The record shows the following. Plaintiff first went to work for defendant in January 1979. His job at that time was "boning shanks." Approximately 3 weeks after he began his employment, plaintiff was injured. Plaintiff testified that Dr. Cegielski "did surgery on my wrist and something down on my elbow here." The wrist surgery was apparently a carpal tunnel operation on plaintiff's right hand. Plaintiff further testified

that a few weeks later, the same doctor performed elbow surgery and that plaintiff eventually returned to work at a different job. He was still in pain at that time.

Plaintiff continued to work. His hand continued to hurt, and he was sent to another doctor whose name plaintiff could not remember. This doctor ordered plaintiff off his job for 2 or 3 weeks, and then plaintiff returned to work. In March of 1980, plaintiff saw a Dr. Somsky, who took plaintiff off work for a short time, but performed no surgery. Plaintiff went back to work, but "the fingers started coming down on me, oh, about another three or four months or later." Plaintiff described that his hand was "closing down, like making a fist."

Plaintiff was then referred to Dr. Richard Murphy, who performed "an ulnar nerve reconstruction with microscopic surgery" in October 1981. Plaintiff was off work "a few months" and was in occupational therapy for much of that time. Plaintiff testified that he was off work from April 23 to June 23, 1982, and returned to work for a "couple of months" and then returned to Dr. Murphy's care. It is difficult to determine, from plaintiff's testimony alone, just what medical services were rendered to him and what time he was off work.

The panel determined that defendant suffered injuries to his right hand on April 22, 1982; that plaintiff was temporarily totally disabled from April 23 to June 23, 1982, and from May 20, 1983, to May 26, 1986; and that plaintiff "thereafter sustained 80 per cent loss of use of his right hand." No party challenges those facts, and they are accepted as correct.

Dr. Murphy reported that prior to his treatment of plaintiff in October 1981, plaintiff had undergone three surgeries: "1) Right carpal tunnel release. 2) Right ulnar nerve transfer at the elbow. 3) Right ulnar nerve laceration at the wrist (age unknown)." Dr. Murphy described plaintiff's operations under his care as: "4) Ulnar nerve reconstruction with microscopic nerve reconstruction. 5) Tendon transfer for ulnar nerve paralysis. 6) Index ray resection. 7) Palmer fasciectomy." Dr. Murphy concluded that plaintiff had suffered an 80-percent impairment of his right hand. There is not any dispute as to that conclusion. Dr. Murphy also concluded that the pain that plaintiff suffered was a part of his disability.

There is no specific evidence in the record as to the incident and resulting treatment of plaintiff's injuries to his right hand in January of 1979. Those injuries were suffered at a time when plaintiff was employed by defendant, but there is nothing in the record to show whether the injury at that time was treated as a workers' compensation injury. There is no dispute that plaintiff suffered a compensable injury in April of 1982.

The dispute arises out of the complications that plaintiff suffered. Plaintiff testified that "they wouldn't give me any kind of pain medicine for pain, and I knew I could drink three or four beers and get it down to where I wouldn't, you know, hurt too bad."

The record shows that plaintiff testified that before he injured his hand in 1979, he would drink socially, but that after the injury in 1979, his use of alcohol changed and got "pretty bad."

Plaintiff testified that on December 31, 1983, he was depressed and went to a bar, where he drank until he became intoxicated. He then drove himself to Saint Joseph Hospital's emergency room and told the people there that he needed help. He was taken to the Saint Joseph Center for Mental Health. Dr. Subhash Bhatia admitted plaintiff and treated him up to the date of the rehearing in this case. Dr. Bhatia kept plaintiff in that hospital until February 6, 1984. Plaintiff was rehospitalized in the same hospital from May 18 to June 1, 1984. The hospital bills for these two periods of time were $9,500.12 and $3,414.10, respectively. The panel ordered these bills to be paid by defendant. There is no dispute as to these hospital bills.

Dr. Bhatia was the admitting and attending doctor in each of these hospitalizations. The details of plaintiff's various hospitalizations are in exhibit 6, to which frequent reference is made by both parties. Exhibit 6 is a pile of copies of hospital and physician records totaling 1 3/4 inches in height. Some pages are numbered and some are not. There does not appear to be any chronological or other order to the documents. Accordingly, references to exhibit 6 in the briefs are useless in directing this court's attention to factors that should be specifically noted. Cf. *Coyle v. Janssen*, 212 Neb. 785, 326

N.W.2d 44 (1982). Nonetheless, we have discovered that Dr. Bhatia was the admitting and attending physician during each hospitalization. The hospital bills have been ordered to be paid. We are not able to determine why Dr. Bhatia's bill for those periods is not also paid.

Plaintiff's first assignment of error has merit, in part, and Dr. Bhatia's bill, in the amount of $1,694.50 for services from December 31, 1983, to October 16, 1984, is ordered to be paid by defendant. Insofar as Dr. Bhatia's bill for $480 for services from January 24, 1986, to February 6, 1987, is concerned, we are unable, as was the panel, to connect that bill with any particular service. The panel did not find that plaintiff was temporarily totally disabled during most of this period. The bill itself shows that part of the payment was made from some source. The panel's order disallowing that bill is affirmed, as is the $45.60 mileage charge for visits to Dr. Bhatia.

Plaintiff's second assignment of error is that the panel did not direct the payment of the hospitalization bill of $4,474.12 at Methodist Hospital's Eppley chemical dependency unit for services rendered to plaintiff from January 17 to February 15, 1985. The only information before us is the bill itself. We find nothing else in the record before us, nor are we directed to any evidence, that would support a finding that this bill is connected with the award in question. Plaintiff's second assignment of error is without merit.

Plaintiff's third and fourth assignments of error may be considered together. As set out above, plaintiff contends that the panel erred in failing to determine plaintiff's "degree of impairment (disability)" and in failing to award "benefits for loss of earning capacity."

At the initial hearing the one-judge court awarded "the sum of $180.00 per week for so long in the future as the plaintiff shall remain totally disabled as a result of said accident." On rehearing, the three-judge panel found that the plaintiff's emotional disorder or depression was aggravated by said accident and injury, but that the evidence did not establish the extent or degree of impairment resulting from the aggravation.

Plaintiff contends that the testimony of his vocational rehabilitation expert determined the degree of plaintiff's

disability resulting from physical injury, aggravation of his psychological condition, and aggravation of his alcohol problem. This expert witness testified at length regarding plaintiff's medical impairment and educational ability. It was the opinion of plaintiff's expert witness that plaintiff has lost the ability to procure, retain, or perform 80 to 90 percent of the jobs which would have been available to him before his injury and associated problems.

The panel, in its award on rehearing, found as follows on this specific issue:

> The Court finds that the plaintiff's alcohol abuse or dependency predated the accident and injury of April 22, 1982, and did not result therefrom. We further find that the plaintiff's emotional disorder or depression was aggravated by said accident and injury, but the evidence fails to establish the extent or degree of impairment resulting from the aggravation.

In reviewing the initial award, the panel had the benefit of the deposition of Dr. Bhatia, plaintiff's treating physician in the areas of depression and alcoholism. That testimony was apparently not available at the time of the initial hearing.

Dr. Bhatia testified at length concerning the difference in plaintiff's attitudes and approach to drinking alcohol before and after plaintiff's 1979 carpal tunnel surgery. He did not, in any degree, differentiate plaintiff's condition in these areas before and after the April 22, 1982, injury which is the subject of this case.

Plaintiff's vocational rehabilitation expert testified generally to the same effect. There is no doubt that plaintiff has been damaged, but there is no proof that damages were the result of the injury in this case.

There was substantial evidence before the panel that plaintiff's alcoholism had predated his April 1982 injury. In our review of a workers' compensation case, the factual findings of the compensation court on rehearing will not be set aside unless clearly wrong. *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988).

Further, it is established that the plaintiff bears the burden of establishing a causal relationship between the accident and

disability. *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983). Plaintiff in this case has not carried that burden.

The panel did find that the accident of April 22, 1982, aggravated plaintiff's "emotional disorder or depression," but that "the evidence fails to establish the extent or degree of impairment." Even if it be concluded the evidence did support a finding that an aggravation resulted from the April 22, 1982, accident, we are in full accord with the panel's conclusion. Plaintiff, his doctor, and his rehabilitation expert set out a great deal of evidence concerning the effect of the 1979 injury. No specific evidence was adduced as to the effect of the 1982 injury on plaintiff's condition resulting from the 1979 accident. In *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 297, 417 N.W.2d 164, 167 (1987), we held, "The burden of proof is upon the plaintiff to show by a preponderance of the evidence that the disability sustained was caused by or related to the accident and was not the result of the normal progression of plaintiff's preexisting condition." Plaintiff did not show the effect of the 1982 accident on his long-lasting condition.

Plaintiff's third and fourth assignments of error are without merit.

The award on rehearing is affirmed as modified herein with regard to the payment of a portion of Dr. Bhatia's bill. Plaintiff is awarded the sum of $750 for attorney services in this court.

AFFIRMED AS MODIFIED.