MARLINE CROUCH, APPELLEE, V. GOODYEAR TIRE & RUBBER COMPANY AND TRAVELERS INSURANCE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLEES, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLANT.

582 N.W.2d 356

Filed July 24, 1998.    No. S-97-1042.

Don Stenberg, Attorney General, and John R. Thompson for appellant.

Anne E. Winner, of Keating, O'Gara, Davis & Nedved, P.C., for appellees Goodyear and Travelers.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

In this appeal, the State of Nebraska contends that the Workers' Compensation Court erred in finding the Second Injury Fund (the Fund) responsible for a portion of workers' compensation benefits awarded to Marline Crouch as a result of injuries she sustained while employed by Goodyear Tire & Rubber Company. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Crouch began working for Goodyear in 1988. On April 3, 1996, Crouch filed a petition seeking to recover workers' com-

pensation benefits for injuries resulting from three work-related accidents: (1) in September 1990, a ruptured tendon of the bicep muscle superimposed on preexisting rotator cuff syndrome and subacromial impingement syndrome; (2) in January 1993, a twisted right knee in addition to preexisting "degenerative joint disease, medial compartment [of the same knee]"; and (3) in May 1994, "bilateral carpal tunnel syndrome from repetitive manual labor work activities." Crouch earned approximately $360 per week at the time of the 1990 injury, $477 per week in 1993, and $430 per week in 1994.

Goodyear and Travelers Insurance, Goodyear's workers' compensation insurer, filed a general denial and a third-party petition against the Fund, which, pursuant to Neb. Rev. Stat. § 48-128 (Reissue 1993), may be responsible for paying a portion of a workers' compensation award in circumstances where the compensable injury is affected by a preexisting permanent partial disability. Goodyear and Travelers alleged:

1. [Crouch] has alleged three separate work accidents during the course and scope of her employment with Goodyear . . . .

2. Injuries and disabilities from the first two accidents may be sufficiently serious to exceed the statutory minimum of 25% loss of earning power or 90 weeks physical impairment; and those pre-existing conditions, when combined with [Crouch's] claims in connection with her third accident of May 15, 1994, may create a substantially greater disabling condition then [sic] Crouch would have suffered with the last injury, considered alone.

3. . . . [T]he Second Injury Fund is or may be liable for all or part of those claims; and the obligation of [Goodyear] and [Travelers Insurance] is limited to the disability which would have resulted from the last injury alone, had there been no pre-existing conditions.

A hearing before a single judge of the Workers' Compensation Court was held on February 6, 1997. The judge granted Crouch's motion to dismiss count I of her petition pertaining to the 1990 injury. The court received evidence consisting of medical records establishing that Crouch sustained the 1990, 1993, and 1994 work-related injuries asserted in her peti-

tion. In addition, the court also received reports from Richard Metz, a rehabilitation counselor, and Alfred Marchisio, a certified professional counselor. Metz and Marchisio agreed that (1) Crouch suffered from preexisting permanent conditions prior to the 1994 accident, (2) the preexisting permanent conditions would have been a hindrance to obtaining and maintaining employment had Goodyear not reemployed her, (3) the preexisting permanent conditions resulted in a 35-percent loss of earning power to Crouch, and (4) the preexisting permanent conditions combined with the injuries resulting from the 1994 accident rendered Crouch substantially greater disabled than she would have been considering the 1994 accident alone. The Fund did not object to the receipt of these reports, and the record contains no evidence contradicting the conclusions of Metz and Marchisio.

In an award entered on April 2, 1997, the compensation court determined that Crouch was entitled to benefits for her 1993 and 1994 injuries. For the 1993 injury, the court awarded Crouch $265 per week in temporary total disability benefits from January 16 through August 20, 1993, and November 8, 1993, through March 1, 1994, a period of 47²/₇ weeks. In addition, the court awarded Crouch $265 per week for 64½ weeks for a "30 per cent permanent functional impairment of her right leg." With respect to the 1994 injury, the court determined that it occurred on May 18, 1994, when her bilateral carpal tunnel symptoms "were aggravated to the degree she interrupted her employment" and sought medical care. The court awarded Crouch $265 per week from the date of the accident "through the date of hearing and for so long in the future as she may remain permanently totally disabled." In addition, the court determined that the "combination" of Crouch's 1994 bilateral hand impairment and 1993 right-knee impairment "present the rare circumstance where the employee's . . . 'permanent disability shall be determined in accordance with the facts . . .' pursuant to Nebraska R.R.S. §48-121(3) (1943, as amended)." The court found the pertinent facts concerning Crouch's employability to be: (1) She was a 58-year-old widow who commenced employment at Goodyear in 1988, (2) she completed the 11th grade but has no additional formal education or specialized training other

than on-the-job training at Goodyear, and (3) she sustained "significant multiple member impairments." Based on these facts, the court concluded that Crouch had not "retained sufficient physical ability or other transferable job skills to obtain employment in a competitive labor market," and therefore, the court concluded that she was "permanently totally disabled."

The court then determined that Goodyear met the employer's burden to establish apportionment of benefits with the Fund under § 48-128 and that Goodyear had satisfied the written records requirement, see § 48-128(2). The court determined that the preexisting permanent partial disability included a 30-percent permanent functional impairment of the right leg as a result of the 1993 accident, entitling Crouch to indemnity payments for 64½ weeks, and a 15-percent permanent functional impairment to her left arm as a result of the 1990 injury, entitling Crouch to "indemnity payments for 33.75 weeks." As a result of the 1993 and 1990 injuries, the court concluded that Crouch sustained a "preexisting member impairment [which] would entitle her to indemnity payments for more than 90 weeks."

The compensation court found that the 1994 accident "resulted in additional permanent partial disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself." The court stated that the carpal tunnel syndrome caused Crouch to be temporarily totally disabled from May 18, 1994, through May 18, 1995, a period of 52½ weeks, and that Goodyear was responsible for the $265 weekly benefit for this period. The court further determined that following the period of temporary total disability, Crouch "experienced a 20 per cent permanent functional impairment of each hand [and] Goodyear alone should pay [Crouch] permanent partial disability at the rate of $265.00 per week for 35 weeks for each hand from May 19, 1995, through September 21, 1996." The court held the Fund liable for "all permanent indemnity payments after September 21, 1996," determined that Goodyear was entitled to a $49,081.21 credit for indemnity benefits paid, and ordered Goodyear to pay Crouch's past and future medical expenses.

The Fund applied for review of the order and award of the Workers' Compensation Court. Following a hearing, the review panel determined that the lower court's findings of fact were not clearly wrong and no error of law appeared on the record. Relying on *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981), the review panel determined that it was not error for the single-judge court to combine Crouch's bilateral carpal tunnel syndrome and preexisting impairment to her left arm and right leg in order to assess her total disability. As a result, the review panel affirmed the judgment against Goodyear and the Fund and ordered the Fund to pay $250 in attorney fees to Crouch.

Thereafter, the Fund filed a notice of appeal, and we removed the matter to our docket pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court.

## ASSIGNMENTS OF ERROR

The Fund contends that the Workers' Compensation Court erred in (1) concluding that Goodyear satisfied § 48-128, (2) awarding Crouch compensation benefits from the Fund in excess of her entitlement from Goodyear and Travelers, and (3) failing to apply the holding from *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988).

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Smart v. Scrivner/Food 4 Less*, 254 Neb. 111, 574 N.W.2d 505 (1998); *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998); *Gaston v. Appleton Elec. Co.*, 253 Neb. 897, 573 N.W.2d 131 (1998). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly

wrong. *Starks v. Cornhusker Packing Co., supra*; *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996); *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

## ANALYSIS

As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred upon it by statute. *Thach v. Quality Pork International*, 253 Neb. 544, 570 N.W.2d 830 (1997). The circumstances under which the compensation court may apportion a workers' compensation award between the Fund and an injured worker's employer are set forth in § 48-128, which provides in pertinent part:

(1) If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. For the additional disability, the employee shall be compensated out of a special trust fund created for that purpose which shall be known as the Second Injury Fund . . . .

. . . .

(3) As used in this section, preexisting permanent partial disability shall mean any preexisting permanent con-

dition, whether congenital or the result of injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. No condition shall be considered a preexisting permanent partial disability under this section unless it would support a rating of twenty-five percent loss of earning power or more or support a rating which would result in compensation payable for a period of ninety weeks or more for disability for permanent injury as computed under subdivision (3) of section 48-121.

We have summarized the elements which must be proved by a preponderance of the evidence to establish Fund liability as follows: (1) a prior permanent partial disability; (2) a second or subsequent injury which is compensable, causing permanent disability; and (3) the combination of permanent disabilities existing after such second or subsequent injury which is substantially greater in degree or percentage than permanent disability considered by itself. *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991); *Norris v. Iowa Beef Processors*, 224 Neb. 867, 402 N.W.2d 658 (1987). The employer bears the burden of proving liability on the part of the Fund because, absent the provisions of § 48-128, the employer would be liable for all of the injury sustained by an employee arising out of and in the course of employment. *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

Clearly, under § 48-128, the Fund's liability is not triggered unless the worker is entitled to receive compensation from the combined disabilities resulting from the last compensable injury and a preexisting permanent partial disability as defined by § 48-128(3). In this case, the Fund contends that this condition was not met because the last injury was to Crouch's hands, and therefore, it is compensable under that portion of Neb. Rev. Stat. § 48-121(3) (Reissue 1993) which provides:

The total loss or permanent total loss of use of both hands, or both arms . . . *in one accident*, shall constitute total and permanent disability and be compensated for according to

subdivision (1) [which specifies benefits for total disability] of this section. In all other cases involving a loss or loss of use of both hands, both arms . . . total and permanent disability shall be determined in accordance with the facts.

(Emphasis supplied.) In *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 421 N.W.2d 32 (1988), we held that the "in one accident" requirement contained in the first sentence quoted above applied to the second quoted sentence as well. From this, the Fund argues that because Crouch's last injury was compensable under § 48-121(3), she was not entitled to receive compensation on the basis of any injury other than that which occurred in May 1994, and the requirement of § 48-128(1) that the employee must be "entitled to receive compensation on the basis of the combined disabilities," i.e., last and preexisting, was not met. We disagree.

*Rodriquez* did not involve an issue of the Fund's liability. In that case, we affirmed a finding of the compensation court that because the employee had injured her right arm in one accident and her left arm in a subsequent accident, she was not entitled to permanent total disability benefits under § 48-121(3) because the injuries were not sustained "in one accident." In the present case, however, the compensation court made a specific finding that the last accident occurred on May 18, 1994, the date on which Crouch's bilateral carpel tunnel syndrome symptoms were aggravated to the degree that she interrupted her employment and sought medical assistance. We conclude that this finding was not clearly wrong and, thus, that Crouch sustained an injury to multiple members in one accident which entitled her to permanent total disability benefits under § 48-121(3).

The compensation court made a further finding that the combination of Crouch's bilateral hand impairment and right leg impairment presented the rare circumstance where the employee's permanent disability benefits under § 48-121(3) were to be determined by the facts, as opposed to the compensation schedule contained in § 48-121(1). This determination involved a question of fact, see *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980), and we conclude that it was not clearly wrong in the present case.

The "facts" upon which the compensation court based its permanent partial disability award included Crouch's 1993 injury, which the court determined was compensable, and the 1990 injury, which although not determined to be compensable, was properly considered in determining whether Crouch had a preexisting permanent partial disability for purposes of § 48-128. There is uncontroverted evidence that, taken together, the 1990 and 1993 injuries resulted in a loss of earning power of more than 25 percent and, thus, constituted a preexisting permanent partial disability according to § 48-128(3). There is also uncontroverted evidence that the degree of disability resulting from the preexisting condition and the last injury in 1994 was greater than Crouch would have sustained from the 1994 injury alone. By virtue of its award of disability benefits "in accordance with the facts," as permitted by § 48-121(3), the compensation court found that Crouch was entitled to compensation on the basis of the combined disabilities. This finding was amply supported by the record and not clearly wrong.

We stated in *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 241, 306 N.W.2d 914, 917 (1981), that § 48-128 conforms with the statutes of many jurisdictions which require that the Fund is "liable for the difference between the compensation that would have been payable for the second injury alone and the compensation payable for the combined injuries." The relevant provisions of § 48-128 have not changed since our decision in *Akins*, and we conclude that the compensation court properly applied those provisions to the evidence in this record in determining that Goodyear met its burden of proving a basis for apportionment of liability to the Fund. We therefore determine that the Fund's assignments of error are without merit and affirm the judgment of the compensation court.

AFFIRMED.