LEWIS C. RIGGS, APPELLANT, v. GOOCH MILLING AND ELEVATOR COMPANY, APPELLEE.

112 N. W. 2d 531

Filed December 22, 1961. No. 35075.

*Crosby, Pansing, Guenzel & Binning* and *Donn E. Davis,* for appellant.

*Healey, Wilson & Barlow* and *Claire D. Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from a judgment of dismissal in a workmen's compensation case. The total disability of the plaintiff is not an issue. The question is whether or not the plaintiff was disabled by an occupational disease within the meaning of section 48-151, R. R. S. 1943.

The case was first heard by a single judge of the compensation court who found for the defendant. Upon a rehearing before the compensation court sitting en banc it also found for the defendant. On a review by the district court in an error proceeding the judgment of the compensation court was affirmed and a judgment rendered in favor of the defendant. The plaintiff has appealed. Under the procedural provisions of the Workmen's Compensation Act, this court will consider the case de novo on the record. Rapp v. Hale, 170 Neb. 620, 103 N. W. 2d. 851.

The plaintiff was employed by the defendant on December 30, 1942. He continued in such employment until May 16, 1958, at which time he was 60 years of age. At the time he terminated his employment he was earning a minimum wage of $76 per week. All medical, hospital, and drug expenses of plaintiff had been paid by the defendant at the time of the rehearing in the compensation court except $101, $10, and $130.70 respectively.

During the first 4 or 5 years of his employment plaintiff's duties consisted of loading and unloading wheat from railroad cars, sweeping out cars, cleaning up after unloading, and in blending wheat to obtain a fixed

grade for flour-milling purposes. Subsequent thereto his duties included the testing of wheat for dirt and other foreign elements and to determine its protein content. The work in the elevator and cars and the blending of the wheat consisted largely of the moving of wheat, which caused the air to be filled with dust in varying amounts, dependent upon location, winds, and weather conditions. Defendant furnished respirators to employees to filter the air. Plaintiff testified that he wore a respirator about half the time only because of his difficulty in getting adequate air through a respirator. The evidence sustains a finding that plaintiff during his employment was subjected to the breathing of wheat dust in varying and unusual amounts throughout his employment.

Plaintiff asserts that he was in good health when he entered the employment of the defendant. Plaintiff's foreman testified that plaintiff had a noticeable shortness of breath when he began his work with the defendant, which continued throughout the duration of his employment. Plaintiff testified that he first noticed a shortness of breath about 8 years after his initial employment by the defendant. He stated he had never previously worked where he was exposed to dust. His difficulty in breathing became so advanced that he was unable to work. Because of this condition he left the defendant's employment on May 16, 1958.

Plaintiff sought treatment by Dr. Arthur L. Smith on September 20, 1957, which was continued until November 16, 1957. Plaintiff has been under the care of Dr. Jon T. Williams since April 8, 1958. These two doctors were called as witnesses by the plaintiff. The defendant called Dr. Maurice E. Stoner of Omaha, who examined plaintiff for the defendant, Dr. J. Marshall Neely of Lincoln, a specialist in radiology, and Dr. O. A. Sander of Milwaukee, Wisconsin, a specialist in diseases of the chest.

The medical testimony is in agreement that plaintiff's

disability is his extreme shortness of breath upon the slightest exertion resulting from a lung condition known as emphysema. Emphysema is defined as an over-dilation of the lungs due to obstruction of the smaller bronchi and bronchiles. It results in an insufficient amount of air entering and leaving the lungs. There is evidence that plaintiff is afflicted with polycythemia, pneumoconiosis, and a decompensated heart. These three terms are generally defined as an excess of red blood cells usually compensatory for a decreased oxygen retention, the retention of dust in the lungs, and excessive strain on the heart in its attempt to supply more blood to body tissues to compensate for the existing oxygen shortage. These three diseases are secondary to the emphysema in that they result therefrom.

It is the contention of the plaintiff that the disease of emphysema with which he is afflicted, under the circumstances shown, is an occupational disease within the purview of section 48-151, R. R. S. 1943, which provides in part: "The term occupational disease shall mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and shall exclude all ordinary diseases of life to which the general public are exposed."

The defendant contends the evidence does not establish that the disease was caused by the employment, that the disease was not an occupational one, and that the disability resulted from plaintiff's susceptibility and sensitivity to wheat dust and is not therefore compensable.

It is clear from the record that plaintiff worked in wheat dust in unusual amounts during the 15 years he was employed by the defendant. Wheat dust is characteristic of the operations of a grain elevator and is peculiar to it within the meaning of the act. Any disease or condition arising from working continuously in wheat dust is not an ordinary disease of life to which

the general public is exposed within the contemplation of the statute. See Eckert v. Commander Larabee Mfg. Co., 278 App. Div. 623, 101 N. Y. S. 2d 860.

It is argued by the defendant that emphysema becomes disabling only to persons who are susceptible and sensitive to the predisposing cause, in this case wheat dust, and is not therefore an incident of the employment, but rather an attribute of the employee's own sensitivity, susceptibility, or allergy to the properties of wheat dust and therefore not compensable. We do not concur in this view. The law of this state has consistently recognized that the lighting up or acceleration of preexisting conditions by accident is compensable. We see no difference in principle in the situation before us. A disability brought about by employment conditions and a preexisting weakness or disease, may be compensable if the conditions bringing it about are characteristic of and peculiar to the employment and do not result in a common disease to which the general public is exposed. The exposure of the plaintiff to wheat dust is a hazard in the operation of grain elevators and, if causal connection be shown between such exposure and the disease of emphysema, the latter is an occupational hazard within the purview of the quoted section of the statute.

The primary question therefore is whether or not there is a causal connection between the disability and wheat dust which the plaintiff inhaled over the 15 years he was employed by the defendant. In resolving this issue the evidence of medical experts is necessarily the controlling factor.

The evidence of Dr. Williams, plaintiff's attending physician, explains fully the condition of the plaintiff based on the history, physical examination, laboratory tests, and X-ray films. It is his conclusion that plaintiff is suffering from emphysema, a form of pneumoconiosis, because of exposure to dust for 8 years in a wheat-dust environment. He testified further that plaintiff, based

upon reasonable medical certainty, was totally and permanently disabled. The conclusion of Dr. Smith, plaintiff's first attending physician, who took a history, made physical examinations, took X-rays, and made laboratory tests, is that plaintiff is suffering from emphysema caused by continuous exposure to wheat dust for a long period of time. It is also the conclusion of Dr. Smith that the plaintiff is totally and permanently disabled.

The testimony of the attending physicians is to the effect that the inhaling of wheat dust in large quantities over a long period of time produces an irritation of the lungs and bronchial tree and an aggravation of an existing abnormal condition which may result in an emphysema reaching a disabling stage. The findings of the attending physicians are that such a disabling condition resulted in the manner thus described.

The medical evidence offered by the defendant reaches a contrary conclusion. The findings of Dr. Stoner and Dr. Sander are similar to those of the attending physicians but their opinions as to the cause of the existing condition of the plaintiff are to the contrary. Dr. Stoner testified that plaintiff is suffering from chronic bronchitis with chronic hypertrophic emphysema. He stated the bronchitis is ordinarily caused by infection and, in his opinion, it was so caused in plaintiff's case. He resorts to plaintiff's history of pneumonia in his youth and to influenza in 1916. He attributes the abnormalities shown on the X-ray films to scar tissue resulting from these prior respiratory infections and notes that the X-rays do not indicate the pattern of any occupational pneumoconiosis with which he is familiar. He further stated that there is no evidence that plaintiff was exposed to free silica dust which is indicative of a non-occupational pneumoconiosis or emphysema.

The record shows that Dr. Sander is a specialist of considerable renown in the field of chest diseases. He examined the X-rays of plaintiff's chest and the evidence of Dr. Williams and Dr. Smith taken at the first

trial of the case. He had never examined the plaintiff. He found no evidence of bronchitis, tuberculosis, silicosis, or byssinosis in the X-ray films. The abnormalities appearing on the X-ray films he described as scars of healed fungus infections of long standing, plus a history of heavy smoking. He bases his conclusion that plaintiff had no occupational disease largely on the absence of silicosis (inhalation of free silica) and byssinosis (inhalation of cotton fibers), and the absence of any X-ray pattern indicating pneumoconiosis or emphysema. He testified that emphysema is a disease of advanced years and often occurs in persons who have never had any dust exposure.

The evidence of Dr. Neely relates only to the findings that could be made from the X-ray films. He testified that there is no evidence of pneumoconiosis, silicosis, or bronchitis. He testified that the cause of emphysema cannot be determined by X-ray alone. He further testified that pneumoconiosis could exist and not be detectable by X-ray. He also stated that it would be impossible to say whether or not plaintiff had been disabled by inhaling dust or other impurities without a physical examination and laboratory tests.

In his testimony Dr. Stoner stated that he does not know if a chronic bronchitis could result from the inhalation of dust; that he could not imagine it without infection; but that it is certainly possible that it could occur. Dr. Sander also stated that it was possible for disabling emphysema to result from dust due to irritation of the bronchus mucous membrane if other factors were present and that there could be an aggravation by dust of an already existing condition.

From a consideration of all the medical testimony on the subject we conclude that emphysema may in its latter stages be an occupational disease. Plaintiff's attending physicians determined from the history, physical examinations, X-rays, and laboratory tests that plaintiff's exposure to wheat dust irritated the lungs and

bronchial tubes, and aggravated the existing condition to such an extent as to culminate in a disabling emphysema. Defendant's medical testimony leads to the conclusion that the existing condition was the result of previous infections and not the wheat dust. It does not rule out the possibility of disabling emphysema as the result of the aggravation of an existing condition. The language of section 48-151, R. R. S. 1943, indicates a legislative intent to include such aggravation as compensable in the following language: "The terms shall include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease." The history of plaintiff's condition shows clearly that he was not exposed to wheat dust in unusual quantities prior to his employment by the defendant. In our judgment, the evidence of the attending physicians provides the preponderance of the evidence, particularly in view of the equivocal character of the defendant's medical evidence as to ruling out disabling emphysema as an occupational disease caused by inhaling unusual quantities of wheat dust over a long period of time and the evidence of the inherent properties of wheat dust as an irritant and aggravation of an existing abnormal condition.

The case of Brown v. Armour & Co., 168 Neb. 835, 97 N. W. 2d 342, is cited by the defendant as controlling. The case is clearly distinguishable in that the evidence there showed that plaintiff was afflicted with a form of leptospirosis not associated with his employment. Other issues raised by this appeal are determined in the case of Hauff v. Kimball, 163 Neb. 55, 77 N. W. 2d 683, and they will not again be considered here.

We conclude that plaintiff is entitled to the benefits of the Workmen's Compensation Act as an employee who is totally disabled from an occupational disease. Plaintiff is awarded compensation in the amount of $34 per week for 300 weeks beginning May 16, 1958,

and $27 per week thereafter for the remainder of his life, as provided by section 48-121, R. S. Supp., 1957. Medical, hospital, and drug expenses are allowed in the sum of $241.70. The costs are taxed to the defendant.

REVERSED AND REMANDED.