GLADYS WILSON, APPELLEE, v. LARKINS & SONS AND CONTINENTAL WESTERN INSURANCE COMPANY, APPELLANTS.

543 N.W.2d 735

Filed February 16, 1996.   No. S-95-534.

Dallas D. Jones and Thomas B. Wood, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for appellee.

CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

This case arises out of appellee Gladys Wilson's claim for workers' compensation for personal injuries she allegedly sustained in the course of her employment with appellant Larkins & Sons. Appellant Continental Western Insurance Company is Larkins & Sons' workers' compensation insurance carrier. Wilson claims she developed hypersensitivity pneumonitis (farmer's lung disease) when she was exposed to molds and dust as she transported milo for Larkins & Sons. The Workers' Compensation Court concluded that Wilson had failed to show, by a preponderance of the evidence, that her disease arose out of or in the course of her employment with Larkins & Sons and dismissed Wilson's petition. Wilson appealed to the Workers' Compensation Court review panel, which affirmed the lower court's finding that Wilson had failed to show that her disease arose out of her employment. However, the review panel remanded this matter to the trial court for further findings of fact regarding whether employment conditions caused Wilson to suffer increased symptoms of a preexisting disease. In their timely appeal, Larkins and Continental assert that the review panel erred in remanding this matter for further findings of fact. We affirm the review panel's judgment in all respects.

## BACKGROUND

Wilson has been employed primarily as a truckdriver during her adult life. At the time of the incidents discussed below,

Wilson was approximately 51 years of age.

Wilson began driving a grain truck and a flatbed for Larkins in approximately 1990 or 1991. On April 19, 1993, Wilson hauled milo for Larkins from a roller mill to an elevator. In order to load the grain truck, Wilson positioned the vehicle under the mill's elevator hopper. Wilson remained in the cab of the truck with her window partially open in order to hear commands to move the truck forward or backward. As the milo flowed into the truck, an extreme amount of dust filled the air so that at times, Wilson was unable to see the length of her truck's trailer. Some dust entered the cab of the truck.

To unload the truck at the elevator, Wilson had to open chutelike hoppers on the bottom of the trailer and monitor the situation as the truck emptied. Wilson testified that April 19 was an extremely windy day, and as she stood by the truck as it emptied, it was "very, very dusty."

Wilson hauled three loads of milo from the grain mill to the elevator on April 19. Before Wilson began work on April 19, she thought she had a cold. After the first load, Wilson's physical condition began to deteriorate. Wilson testified that by the third load, "I couldn't hardly breathe at all. My chest was extremely tight, and I was in a great deal of chest pain." When Wilson arrived home after work, she needed assistance walking from the car to the house. Wilson made an immediate appointment with her physician, Dr. Robert Liebel.

Dr. Liebel's office notes from April 19 indicate that Wilson had marked bilateral wheezing and was in obvious respiratory distress. Dr. Liebel admitted Wilson to the county hospital. According to the hospital's records, Wilson said she had suffered from shortness of breath and a harsh, nonproductive cough for the past several days. Wilson was treated and discharged on April 22 with a primary diagnosis of asthmatic bronchitis, but the possibility of pneumonitis was noted.

Wilson had experienced respiratory problems before April 19. Wilson had smoked approximately two packs of cigarettes per day for more than 20 years. In 1985, Wilson was treated for a broken leg. Her medical records indicated that when she was admitted to the hospital for the broken leg, she had an upper respiratory infection and bronchitis and complained of shortness

of breath upon exertion. The respiratory problems were attributed to her smoking. It was also noted that Wilson was quite obese.

In May 1988, Wilson underwent a routine physical in order to maintain her commercial driver's license. Wilson's smoking and obesity were documented, and she was admonished to quit smoking. However, Wilson was not placed on any work restrictions.

In May 1989, Wilson was tested for a variety of allergies, and those tests indicated that she was sensitive to grasses, ragweed, trees, shrubs, house dust, epidermals, and fungi.

In July 1990, Wilson had a respiratory reaction after picking chokecherries. Wilson was admitted to the county hospital with chest pain, shortness of breath, and wheezing. Wilson remained in the hospital for 3 days and was discharged with a diagnosis of respiratory distress and reactive airways disease.

We now return to the events following Wilson's April 1993 hospitalization. Wilson was referred to Dr. Anup Chakraborty for further evaluation and was examined on May 12, 1993. Dr. Chakraborty noted that Wilson complained of having had a chronic cough all winter long and shortness of breath upon slight exertion. It was further noted that Wilson had quit smoking after April 19, but continued to suffer respiratory problems. Dr. Chakraborty stated that his impressions of Wilson's problems included hypersensitivity pneumonitis, probably secondary to her exposure to corn and milo dust or moldy hay; hypertension; significant obesity; and past heavy tobacco use. Dr. Chakraborty prescribed treatment with high doses of steroids.

Dr. Chakraborty saw Wilson again on May 25, 1993. Wilson had improved, but some restrictive defects affecting her pulmonary functions were still present.

When Dr. Chakraborty evaluated Wilson's progress on July 6, 1993, Wilson's pulmonary functions had improved. At that time, it was felt that Wilson could go back to work slowly, but she was advised to avoid exposure to grain dust and was encouraged to lose weight. Dr. Chakraborty noted that Wilson's "[p]resent pulmonary function shows a restrictive defect which is probably because of her obesity rather than anything else."

On October 5, 1993, Wilson filed a petition in the Nebraska Workers' Compensation Court alleging that she had sustained injuries to her lungs in an accident arising out of and in the course of her employment with Larkins. She alleged that she had developed hypersensitivity pneumonitis precipitated by exposure to molds and dust and that she was permanently partially disabled. In their answer, Larkins and Continental denied that Wilson suffered from any disability and further stated that if she did have a disability, such disability was not the result of or attributable to any accident or occupational disease arising out of the course of her employment.

At the request of Larkins and Continental's attorney, Wilson was examined by Dr. John Connolly on January 24, 1994. Dr. Connolly concluded that there was no evidence of hypersensitivity pneumonitis. In Dr. Connolly's opinion, Wilson had chronic bronchitis, which was probably the result of her intense cigarette smoking for many years. Dr. Connolly stated that as a result of her chronic bronchitis, Wilson had reactive airways, which might cause her to respond with increased symptoms to corn and milo dust, but that he did not believe that exposure to corn and milo dust was the underlying cause of her disease.

On February 2, 1994, Dr. Chakraborty examined Wilson on behalf of Wilson's attorney. Wilson had not lost any weight, was considerably short of breath, and had not been able to drive a truck or perform any strenuous activities. Dr. Chakraborty noted that Wilson's chest x ray looked "almost as bad as the first chest X-ray on May 12, 1993 or maybe even slightly worse." He concluded that his "final impression was that she does have severe restrictive lung disease, probably interstitial fibrosis secondary to 'farmer's lung' secondary to exposure to grain dust, etc, in her job."

After a hearing, the Workers' Compensation Court entered an order of dismissal on May 17, 1994. In its order, the court stated that the primary issue was one of causation:

> [Wilson] alleges in her petition that she contracted hypersensitivity pneumonitis on April 19, 1993, when she was exposed to molds and dust while in the employ of [Larkins]. The defendants respond that any condition for

which she suffers is not the result of an accident or occupational disease arising of or in the course of employment . . . . The medical evidence with respect to this issue is in conflict.

[Wilson] in her briefs cites the Court to the opinion of Dr. Anup Chakraborty who on February 2, 1994, stated that "she does have severe restrictive lung disease, probably interstitial fibrosis secondary to 'farmer's lung' secondary to exposure to grain dust, etc, in her job". . . . [Larkins and Continental] in turn cite the Court to the opinion of Dr. John Connolly who on February 14, 1994, stated that "the patient's diagnosis is not totally clear. There is no evidence for hypersensitivity pneumonitis in this case" . . . .

The Court must therefore review the entire evidence for the purpose of resolving this conflict of opinion regarding causation.

Of particular concern to the Court is the internal inconsistency of Dr. Chakraborty's opinion. Exhibit 9 consist[s] of the various reports of Dr. Chakraborty. It reflects that Dr. Chakraborty saw [Wilson] on three occasions in May and June [sic] of 1993. Thereafter, he did not see [Wilson] again until February, 1994, on a referral from [Wilson's] attorney. In Dr. Chakraborty['s] notes from [Wilson's] third visit with him on June [sic] 6, 1993, he states that "present pulmonary function shows a restrictive defect which is probably because of her obesity rather than anything else" . . . . Of course, this opinion with respect to causation is significantly different than that provided in February, 1994. No explanation is provided by Dr. Chakraborty addressing or otherwise explaining this inconsistency.

The Workers' Compensation Court reviewed Dr. Connolly's opinion that Wilson's illness was in response to a variety of stimuli, including her allergies, weight, and smoking. The court concluded that based on the evidence as a whole, it found Dr. Connolly's opinion was more credible than Dr. Chakraborty's opinion. The court concluded that Wilson had failed to show, by a preponderance of the evidence, that the disease from which

she suffered arose out of or in the course of her employment. Accordingly, the court dismissed Wilson's petition.

On April 14, 1995, the review panel of the Workers' Compensation Court affirmed the lower court's finding that Wilson had failed to show that her condition arose out of and in the course of her employment. However, the review panel remanded the matter for a determination as to whether Wilson suffered "increased symptoms" due to exposure to corn and milo dust during her employment with Larkins. Larkins and Continental timely appealed to the Court of Appeals, and we removed the case to our docket.

## ASSIGNMENTS OF ERROR

Larkins and Continental assign as error the review panel's remand of this matter for a determination as to whether Wilson's alleged exposure to grain dust caused her to have increased symptoms and whether Wilson, in fact, experienced increased symptoms.

## STANDARD OF REVIEW

The findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal to a Workers' Compensation Court review panel unless they are clearly wrong on the evidence or the decision was contrary to law. *Hemmerling v. Happy Cab Co.*, 247 Neb. 919, 530 N.W.2d 916 (1995); Neb. Rev. Stat. § 48–179 (Reissue 1993).

Neb. Rev. Stat. § 48–185 (Reissue 1993) precludes an appellate court from substituting its view of the facts for that of the compensation court if the record contains evidence to substantiate the factual conclusions reached by the compensation court. *Surratt v. Watts Trucking, ante* p. 35, 541 N.W.2d 41 (1995). In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, the appellate court reviews the findings of the single judge who conducted the original hearing. *Hemmerling v. Happy Cab Co., supra*; § 48–185.

When testing the sufficiency of the evidence to support findings of fact by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the

benefit of every inference reasonably deducible from the evidence. *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991).

With respect to questions of law in workers' compensation cases, the appellate court is obligated to make its own determination. *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995); *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). See *Surratt v. Watts Trucking, supra*. It is for the compensation court to determine which, if any, of the expert witnesses to believe. *Surratt v. Watts Trucking, supra*.

## ANALYSIS

Given the applicable standards of review, we must review the findings of fact made by the Workers' Compensation Court trial judge to determine whether the record contains evidence to substantiate his or her factual conclusions. In so doing, we must consider the evidence in the light most favorable to Larkins and Continental and give Larkins and Continental the benefit of every inference reasonably deducible from the evidence. The trial court gave weight to Dr. Connolly's expert opinion and rejected Dr. Chakraborty's opinion. We must do the same. However, with respect to questions of law, we are obligated to make our own determination.

The trial court made no specific finding of fact regarding whether Wilson's preexisting lung condition had been aggravated by her exposure to grain dust on the job. Although Dr. Connolly rejected a diagnosis of hypersensitivity pneumonitis, he did conclude that Wilson had chronic bronchitis and stated that he would "expect that she would respond with increased symptoms to exposure of dust of any type including corn and milo dust . . . ."

The law is well settled that a preexisting disease and an accident may combine to produce a compensable disability under the Workers' Compensation Act. . . .

Similarly, a preexisting disease and an aggravation of that disease may combine to produce a compensable injury, as we held in *Riggs v. Gooch Milling & Elevator Co.*, 173 Neb. 70, 74, 112 N.W.2d 531, 533 (1961), where we stated: "The law of this state has consistently recognized that the lighting up or acceleration of preexisting conditions by accident is compensable. We see no difference in principle in the situation before us. A disability brought about by employment conditions and a preexisting weakness or disease, may be compensable if the conditions bringing it about are characteristic of and peculiar to the employment and do not result in a common disease to which the general public is exposed."

*Miller v. Goodyear Tire & Rubber Co.*, 239 Neb. 1014, 1019–20, 480 N.W.2d 162, 166–67 (1992).

Pursuant to *Miller v. Goodyear Tire & Rubber Co., supra,* and *Riggs v. Gooch Milling & Elevator Co.*, 173 Neb. 70, 112 N.W.2d 531 (1961), Wilson may have a compensable disability. The workers' compensation trial court could have and should have made a finding of fact as to whether Wilson's employment conditions aggravated her preexisting weakness under the analysis expressed in the above cases.

## CONCLUSION

We affirm the order of the Workers' Compensation Court review panel remanding this matter for further findings of fact.

Wilson's motion for attorney fees of $5,125 is granted.

AFFIRMED.

WHITE, C.J., participating on briefs.