TYRONE MILLER, DOING BUSINESS AS TY MILLER DENTAL LAB, APPELLANT AND CROSS-APPELLEE, v. E.M.C. INSURANCE COMPANIES, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE AND CROSS-APPELLANT, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEE AND CROSS-APPELLANT.

610 N.W.2d 398

Filed May 12, 2000.   No. S-99-232.

Dennis D. King, of Smith and King, P.C., for appellant.

Waler E. Zink II, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee E.M.C. Insurance Companies.

Don Stenberg, Attorney General, and John R. Thompson for appellee State.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This is an appeal from an "Order of Affirmance as Modified on Review" entered by the review panel of the Nebraska Workers' Compensation Court. Tyrone Miller, doing business as Ty Miller Dental Lab, appealed the order, and E.M.C. Insurance Companies (E.M.C.) and the State of Nebraska, Second Injury Fund (the Fund), cross-appealed, all alleging error in the order as modified by the review panel. On our own motion, we removed the matter to this court pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## BACKGROUND

Miller filed a petition with the compensation court alleging that he was self-employed as a dental laboratory technician and sustained injury arising out of and in the course of his employment on June 9, 1993, and February 21, 1994. Miller alleged that on June 9, 1993, he sustained injuries to his upper back and extremities while trying to sit on a chair at his place of employment. Miller alleged that on February 21, 1994, he fell on the sidewalk while leaving his place of employment and sustained an injury to his right shoulder area. E.M.C. filed an answer admitting Miller was injured, admitting notice, and admitting Miller was insured by E.M.C. on June 9, 1993, and February 21, 1994, but denied liability to Miller. Miller then filed an amended petition impleading the Fund as a third-party defendant. The amended petition alleged that Miller had a permanent partial disability prior to the two work-related accidents due to a car accident in 1958 in which Miller suffered compression fractures to the fifth through the seventh vertebrae, resulting in permanent partial paraplegia. The amended petition further alleged that the combination of the preexisting injuries and the injuries from the work-related accidents caused a permanent total disability. The Fund filed an answer also denying liability.

Trial was had in the compensation court before a single judge. The trial court found that Miller was entitled to benefits under the Nebraska Workers' Compensation Act, finding that Miller had sustained his burden of proving that he suffered work-related accidents and injuries on June 9, 1993, and on February 21, 1994, arising out of and in the course of his employment. Specifically, the trial court found that on June 9, Miller was self-employed as a dental laboratory technician and while so employed and engaged in the duties of his employment, he suffered injuries to his back as a result of an accident arising out of and in the course of his employment. The trial court found that as a result of said accident and injury, Miller was temporarily partially disabled from and including June 10, 1993, to and including February 21, 1994. The trial court also found that on February 21, 1994, Miller was self-employed as a dental laboratory technician and while so employed and engaged in the duties of his employment, he suffered injuries to his right shoulder as a result of an accident arising out of and in the course of his employment. The trial court found that as a result of said accident and injury and in combination with the accident and injury of June 9, 1993, Miller continued to be temporarily partially disabled from and including February 22, 1994, to and including April 21, 1994. The trial court found that thereafter, Miller became temporarily totally disabled from and including April 22, 1994, to and including April 26, 1995, and that thereafter, Miller became permanently and totally disabled. The trial court further found that Miller sustained a 10-percent permanent partial disability to his right arm.

The trial court found that E.M.C. had failed to show that the Fund should be apportioned liability for the benefits awarded to Miller. However, the trial court found that Miller had presented evidence which satisfied the requirements of Neb. Rev. Stat. § 48-128 (Reissue 1993) and apportioned liability to the Fund. Specifically, the trial court found that the Fund was liable for 80 percent of Miller's indemnity benefits as of April 27, 1995, for so long as Miller shall remain permanently and totally disabled. The trial court also ordered E.M.C. to pay for Miller's medical expenses, including reimbursing the State Department of Education's vocational rehabilitation services for expenses incurred in modifying Miller's home.

The trial court further found that Miller was entitled to receive penalties and interest on unpaid indemnity benefits from June 6, 1994, the date E.M.C. had clear, uncontroverted notice that Miller had been advised to quit working by Dr. Terry M. Himes. The trial court specifically provided:

> The penalty to be assessed against the defendant EMC Insurance Companies is $20,670.00, representing a 50 percent penalty on $46\frac{3}{7}$ weeks of temporary total disability benefits at $265.00 per week and in addition the sum of $26.00 per week from April 27, 1995, to June 11, 1997, a period of $110\frac{4}{7}$ weeks, and a like sum for each additional week that compensation due and owing the plaintiff remains unpaid. The defendant is also to pay interest at the statutory rate for the same periods of time.

The trial court further ordered E.M.C. to pay Miller's attorney fees in the amount of $10,000 plus costs incurred in the litigation.

An application for review was filed by the Fund, and E.M.C. and Miller both cross-appealed. A review hearing was held before a review panel of the compensation court. The review panel affirmed the trial court's decision in all respects except for the award of penalties and interest, which was modified and reduced. The review panel found that the penalty was incorrectly calculated by the trial court. The review panel specifically found:

> The correct penalty to be assessed against the defendant EMC is $9,093.29 through June 11, 1997, the date of trial. This total figure represents a 50 per cent waiting time penalty ($132.50 per week) for $46\frac{3}{7}$ weeks of temporary total disability from and including June 6, 1994, through April 26, 1995, or $6,151.79, a figure which EMC does not contest in its brief. In addition, the 50 per cent penalty is also owed for 111 weeks from and including April 27, 1995, through the date of trial of June 11, 1997, and such weekly penalty is $26.50 or a total of $2,941.50 through the date of trial.

The review panel further found that the $26.50-per-week waiting-time penalty would be ongoing from and after the date of trial up to the date at which past-due benefits payable pur-

suant to the trial court's award are paid in full. Finally, the review panel determined that its finding of error in the assessment of the penalty resulted in a reduction in the amount of the award and precluded an award of further attorney fees to Miller on review.

Miller appealed, and E.M.C. and the Fund cross-appealed.

## ASSIGNMENTS OF ERROR

Miller assigns, restated, that the review panel erred in (1) finding that the trial court's calculation and determination of the amount of penalties was in error; (2) finding that as a result of the reduction in the penalty, Miller was precluded from an award of further attorney fees on review; (3) affirming the trial court's finding that the opinion of the certified professional counselor, Alfred J. Marchisio, Jr., was not admissible because Miller failed to follow the procedures set forth in the rules of the compensation court; and (4) failing to assess penalties, interest, and attorney fees against E.M.C. and the Fund.

E.M.C., in its cross-appeal, assigns that the review panel erred in (1) failing to find that Miller, as a self-employed, sole proprietor, had failed to establish his entitlement to receive compensation benefits in accordance with Neb. Rev. Stat. § 48-115(4) (Reissue 1993); (2) affirming the trial court's finding that E.M.C. is to pay 20 percent of Miller's permanent and total disability benefits; (3) awarding Miller penalties, interest, and attorney fees; and (4) affirming the trial court's finding that E.M.C. is to pay for modifications made to Miller's home.

In its cross-appeal, the Fund assigns that the review panel erred in affirming the trial court's (1) award of permanent total disability benefits and (2) finding that the requirements of § 48-128 were met, thereby apportioning liability to the Fund.

## SCOPE OF REVIEW

■ Pursuant to Neb. Rev. Stat. § 48-185 (Supp. 1999), an appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judg-

ment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999); *Variano v. Dial Corp.*, 256 Neb. 318, 589 N.W.2d 845 (1999).

Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Frank v. A & L Insulation, supra; Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Frank v. A & L Insulation, supra; McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999).

In testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *McBee v. Goodyear Tire & Rubber Co., supra; Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999); *Variano v. Dial Corp., supra.*

Admission of evidence is within the discretion of the compensation court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Sheridan v. Catering Mgmt., Inc.*, 252 Neb. 825, 566 N.W.2d 110 (1997); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

## ANALYSIS

### Notice of Intent to Establish Insurance Coverage

We must first address E.M.C.'s contention that the review panel erred in failing to find that Miller, as a self-employed dental laboratory technician, has failed to establish his entitlement to receive compensation benefits in accordance with § 48-115(4). Section 48-115(4) states, in pertinent part:

> Each . . . self-employed person who is actually engaged in the . . . self-employed person's business on a substantially full-time basis may elect to bring himself or herself within the provisions of the Nebraska Workers' Compensation Act, if he or she (a) files with his or her current workers' compensation insurer written notice of election to have the same rights as an employee only for purposes of workers' compensation insurance coverage acquired by and for such . . . self-employed person or (b) gives notice of such election and such insurer collects a premium for such coverage acquired by and for such . . . self-employed person.

E.M.C.'s contention that Miller failed to establish his entitlement to receive compensation benefits in accordance with § 48-115(4) is without merit because E.M.C. admitted in its answer that Miller was insured by E.M.C. on the dates of Miller's work-related injuries. In addition, E.M.C.'s actions and involvement in Miller's compensation claim prior to the hearing before the trial court indicates E.M.C.'s knowledge that Miller had elected to bring himself within the provisions of the Nebraska Workers' Compensation Act.

### TOTAL DISABILITY BENEFITS

The Fund assigns that Miller should not be awarded total disability benefits. Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Yarns v. Leon Plastics, Inc.*, 237 Neb. 132, 464 N.W.2d 801 (1991). Whether a claimant has sustained disability which is total or partial and which is temporary or permanent is a question of fact. *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991).

The trial court found that Miller's accidents on June 9, 1993, and February 21, 1994, in combination with his preexisting condition, resulted in Miller's permanent and total disability. The record contains a letter from Himes to Dr. Joel F. Hutchins, the referring doctor, dated March 30, 1994, that references Miller's February fall and his declining ability to work. Another letter from Himes to Hutchins, dated April 21, 1994, states:

If anything, his range of motion has decreased in the brief interim since I saw him last, on March 30, 1994. He is continuing to complain of numbness and pain at both elbows and progressive loss of range of motion of both shoulders. His job is very definitely aggravating this problem for him.

Since this gentleman is so heavily dependent on his upper extremities due to his paraplegia, I think the additional work associated with his job is further aggravating the condition, and I've suggested he stop that. Really, at this point there's no other alternative, as he's simply unable to perform the tasks.

Himes offers a further detailed discussion of Miller's accidents and resultant disability in a letter dated August 17, 1994, wherein Himes states, "I do not believe he is capable of working as a result of the problems as mentioned [in the letter]. It was my recommendation that he discontinue work for these reasons."

Miller was referred by Himes to Dr. Diane E. Gilles and first saw Gilles for treatment of his shoulder pain on June 14, 1994. After an MRI conducted on August 11, 1994, Miller was diagnosed with a right rotator cuff tear. Gilles recommended surgical repair of the rotator cuff. At E.M.C.'s request, an evaluation of Miller was done at the Colorado Rehabilitation Institute by Dr. Jeffrey A. Wunder, which evaluation confirmed the necessity of the surgical repair. E.M.C. declined to approve Miller's rotator cuff repair. Instead, the medical case manager was instructed on October 19, 1994, to put Miller's case "on hold," despite two uncontroverted recommendations that Miller undergo surgery.

Miller did not see Gilles again until April 1995, after his attorney was advised by a letter dated April 6, 1995, that the insurer was now prepared to authorize and provide for Miller's surgery. By that time, however, it was Gilles' opinion that 14 months' postinjury was too late to achieve any meaningful repair. The trial court found that at that point, April 20, 1995, Miller had reached maximum medical improvement and was permanently and totally disabled. In so finding, the trial court noted that Miller suffered from a preexisting disability, yet he had been a productive member of society, running his own business and earning a net income in excess of $22,000 annually.

The decline in Miller's condition began with his fall in June 1993, a clearly compensable accident, and continued through February 1994, when he fell again. Had Miller received the medical treatment that was recommended for his shoulder, his career may have been salvaged.

The evidence shows that Miller is a high school graduate. The car accident which left him permanently partially disabled occurred shortly after Miller graduated from high school. Miller became a dental laboratory technician through vocational rehabilitation, and this is the only occupation he has held throughout his employment history. Miller is now 60 years old.

The trial court properly considered Miller's restrictions and limitations as described by Himes and Gilles, and his ability to earn wages before and after the accidents, and found that Miller is permanently and totally disabled and unable to earn wages in a meaningful way. The record contains evidence to substantiate the factual conclusion that Miller is permanently and totally disabled. The trial court was not clearly wrong in so concluding.

## LIABILITY OF SECOND INJURY FUND

E.M.C. assigns that the review panel erred in affirming the trial court's decision in its apportionment of the indemnity benefits due Miller by assigning 80 percent to the Fund and 20 percent to E.M.C. E.M.C. contends that it is responsible for only a 10-percent permanent impairment to Miller's right arm. E.M.C.'s assignment is related to the Fund's assignment of error wherein the Fund argues that the requirements of § 48-128 were not met and that therefore, the Fund should not have been apportioned liability. As such, both assignments will be discussed together.

To determine whether the Fund is liable, we must look to § 48-128, which states:

(1) If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his or her obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent

compensable injury resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.

. . . .

(3) As used in this section, preexisting permanent partial disability shall mean any preexisting permanent condition, whether congenital or the result of injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. No condition shall be considered a preexisting permanent partial disability under this section unless it would support a rating of twenty-five percent loss of earning power or more or support a rating which would result in compensation payable for a period of ninety weeks or more for disability for permanent injury as computed under subdivision (3) of section 48-121.

In sum, the elements required to establish the Fund's liability are (1) a prior permanent partial disability known to the employer and hindering the employee's employability, (2) a subsequent compensable injury causing permanent disability to the employee, and (3) a combined permanent disability substantially greater in degree or percentage than would have resulted from the subsequent injury considered alone. *Miller v. Meister & Segrist*, 255 Neb. 805, 587 N.W.2d 399 (1998).

The burden of proof necessary to establish apportionment under § 48-128 is upon the employer who seeks the benefits of that statute. *Crouch v. Goodyear Tire & Rubber Co.*, 255 Neb. 128, 582 N.W.2d 356 (1998); *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

■ E.M.C. did not present evidence showing that the Fund should be liable for some portion of the indemnity benefits awarded to Miller. However, the trial court found that Miller had presented evidence which satisfied the requirements of § 48-128. The burden of proof which a party has may be supported by evidence produced by the opposing party as well as by his or her own evidence. We conclude the trial court did not err in concluding that the requirements of § 48-128 were met in this case. The first element required to establish the Fund's liability is met because Miller has a prior permanent partial disability which hinders his employability. Miller's preexisting permanent partial disability would support a 25-percent loss of earning power or a 90-week period of compensation. Miller was in a car accident in 1958, in which he sustained compression fractures to the fifth through the seventh vertebrae and permanent partial paraplegia with significant lower extremity spasticity. Miller testified that he was completely paralyzed immediately following the accident and underwent a course of therapy starting about 6 weeks later. It was not until 1961 that Miller was ready to begin vocational rehabilitation when he started a course of study in dental technology. Miller has depended on either a wheelchair or a walker since the car accident. The second element is met because Miller's shoulder injury is a subsequent compensable injury causing permanent disability. The third element is also met because Miller has a combined permanent disability substantially greater in degree or percentage than would have resulted from the subsequent injury considered alone. In the deposition of Gilles, she offered the opinion that Miller's preexisting disability in combination with the work-related injuries that occurred in June 1993 and February 1994 resulted in a substantially greater disability than would have resulted from just the separate injuries in June 1993 and February 1994.

As to the apportionment of liability for Miller's total and permanent disability of 80 percent to the Fund and 20 percent to E.M.C., E.M.C. argues that it is liable for only the 10-percent permanent impairment to Miller's right arm. Gilles testified as follows:

Q. Dr. Gilles, if you were to disregard the preexisting condition of Mr. Miller and any resulting disability from

that preexisting condition, did Mr. Miller's injuries complained of from his falls in June of '93 and February of '94 result in a disability?

A. Yes.

Q. And what disability, in your opinion?

A. He had disabilities to both shoulders of 10 percent to the right shoulder and 8 percent of the left shoulder.

Q. Were those considered permanent disabilities?

A. Yes.

Gilles' testimony established the criteria as set out in § 48-128 that the employer at the time of the last injury shall be liable for only the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. Therefore, Gilles' testimony establishes that E.M.C. should have been apportioned 10 percent and the Fund 90 percent. The trial court found, and the Court of Appeals affirmed, that the apportionment should be 20 percent to E.M.C. and 80 percent to the Fund.

Wunder stated in his report:

Based on past history and examination of the patient's history and physical examination, I would apportion 80% of his current problems as being related to the 1958 motor vehicle accident, partial paraplegia, and subsequent overuse related to ambulation problems. I would relate 20% currently of his right shoulder injury to the work injury in 2/94.

Wunder's report does not establish that the apportionment should be a ratio of 80 percent to 20 percent as opposed to a ratio of 90 percent to 10 percent. Unlike Gilles, Wunder did not consider and evaluate the subsequent injury "alone and of itself," as required by § 48-128, but, rather, evaluated it as coexistent with the prior injury. Accordingly, pursuant to § 48-128, we find that there was not sufficient competent evidence in the record to warrant the making of the order apportioning liability of 80 percent to the Fund and 20 percent to E.M.C. However, we do find that there is sufficient competent evidence, based on Gilles' testimony, to support an apportionment of 90 percent to the Fund and 10 percent to E.M.C., and that is our holding in this case.

PENALTIES, ATTORNEY FEES, AND INTEREST

Next, we will address all of the alleged errors, raised by both E.M.C. and Miller, which relate to the trial court's awarding of penalties, attorney fees, and interest to Miller. E.M.C. contends that Miller should not have been awarded any waiting-time penalties, attorney fees, or interest. Neb. Rev. Stat. § 48-125 (Reissue 1998) provides:

> [F]ifty percent shall be added for waiting time for all delin-quent payments after thirty days' notice has been given of disability. Whenever the employer refuses payment of compensation or medical payments . . . subject to such sec-tion after thirty days' notice has been given of the obliga-tion for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a rea-sonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award. . . .
>
> (2) When an attorney's fee is allowed pursuant to this section, there shall further be assessed against the employer an amount of interest on the final award obtained . . . .

Under this section, the 50-percent penalty for waiting time applies when payments are delinquent after 30 days' notice of disability has been given or there is no reasonable contro-versy and the employer refuses or neglects to pay compensation for 30 days after the injury. *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

The record contains a report dated June 6, 1994, from Centennial Rehabilitation Associates, Inc., addressed to E.M.C., which states that "[u]nder current conditions, it is doubtful if [Miller] will be able to continue working. Reportedly, Himes has instructed him to quit his present occupation." Therefore, on June 6, 1994, E.M.C. had clear, uncontroverted notice that Miller had been advised to quit working. Thirty days passed after this date without any payments being made by E.M.C. Therefore, the trial court did not err in finding that Miller is enti-tled to receive penalties from E.M.C. on unpaid benefits starting on June 6.

Miller is also entitled to the attorney fees and interest awarded by the trial court because E.M.C. refused payment of

compensation after 30 days' notice had been given and after proceedings were had in the compensation court where Miller received the award.

Miller contends that the review panel erred in modifying the penalties on the unpaid indemnity benefits. The trial court found:

> The penalty to be assessed against the defendant EMC Insurance Companies is $20,670.00, representing a 50 percent penalty on $46\frac{3}{7}$ weeks of temporary total disability benefits at $265.00 per week and in addition the sum of $26.00 per week from April 27, 1995, to June 11, 1997, a period of $110\frac{4}{7}$ weeks, and a like sum for each additional week that compensation due and owing the plaintiff remains unpaid. The defendant is also to pay interest at the statutory rate for the same periods of time.

It was apparent to the review panel that there was a discrepancy between the calculation of the penalties and the total dollar value that was placed on the penalties. In other words, a 50-percent penalty ($132.50 per week) for $46\frac{3}{7}$ weeks of temporary total disability benefits and $26 per week for $110\frac{4}{7}$ weeks, does not add up to $20,670. The review panel determined that the correct penalty to be assessed against E.M.C. was $9,093.29 through June 11, 1997, the date of trial. The review panel explained that this figure represents a 50-percent penalty ($132.50 per week) for $46\frac{3}{7}$ weeks of temporary total disability from and including June 6, 1994, through April 26, 1995, or $6,151.79; and a 50-percent penalty for 111 weeks from and including April 27, 1995, through the date of trial of June 11, 1997, and such weekly penalty is $26.50 or a total of $2,941.50 through the date of trial. The review panel also found that the $26.50-per-week waiting-time penalty is ongoing from and after the date of trial up to the date at which past-due benefits payable pursuant to the trial court's award in this case are paid in full.

The $6,151.79 for $46\frac{3}{7}$ weeks of temporary total disability calculated by the review panel is correct. Its calculation for penalties owed from April 27, 1995, to June 11, 1997, however, needs to be modified to correct clear error. The trial court awarded Miller permanent and total disability benefits of $265 per week from and including April 27, 1995, to and including

June 11, 1997. Miller is entitled to a 50-percent waiting-time penalty of $132.50 per week for this period of time. The review panel ordered E.M.C. to pay 20 percent of this amount, and it did not assess any waiting-time penalty against the Fund. Miller argues that the review panel should have awarded more penalties than it did and could have apportioned the additional penalties to the Fund.

We determine that Miller is entitled to penalties equivalent to the full $132.50 per week (50 percent of $265) for the time period of April 27, 1995, to June 11, 1997, rather than just $26.50 per week as awarded by the review panel. We understand the review panel's calculation making E.M.C. liable for 20 percent of the penalties, since that is the percent of liability of the actual payments E.M.C. was ordered to pay. However, Miller is entitled to the full amount of penalties.

We conclude that the Fund should be apportioned penalties. We have previously determined that the Fund is an employer within the meaning of § 48-125(1) for purposes of attorney fees under that section. See, *Sherard v. Bethpage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991); *Pollard v. Wright's Tree Service, Inc.*, 212 Neb. 187, 322 N.W.2d 397 (1982). Although these cases dealt with awarding attorney fees to the employee, the penalty provisions are included in the same subsection as the attorney fees provisions, § 48-125(1). We conclude that since the Fund has been treated as an employer for purposes of attorney fees under § 48-125(1), the Fund should be considered an employer for all purposes under that subsection. The Supreme Court of Connecticut has recently addressed the issue of whether a second injury fund may be ordered to pay penalties for failing to make timely indemnity payments. In *Casey v. Northeast Utilities*, 249 Conn. 365, 377, 731 A.2d 294, 301 (1999), the Connecticut Supreme Court held that "[b]ecause the fund essentially stands in the shoes of the employer for purposes of payment of compensation benefits to the injured employee, we conclude that the penalty provision . . . is equally applicable to the fund." In the instant case, the Fund and E.M.C. are standing in the shoes of the employer because they have been ordered to pay the indemnity benefits due to Miller. The benefits the Fund has been ordered to pay are benefits for which E.M.C.

would have otherwise been liable. Therefore, we conclude that the Fund should be apportioned penalties. However, the Fund cannot be held accountable for penalties incurred before the Fund was given notice of Miller's disability, pursuant to § 48-125(1). As stated earlier, E.M.C. was given notice of Miller's disability by a report dated June 6, 1994, which advised that Miller had been advised to quit working. However, the Fund did not receive notice at that time. The Fund was not given notice of Miller's disability until it was brought in as a third-party defendant on July 8, 1996. It is from that date forward that the Fund is liable for a portion of the penalties awarded to Miller. E.M.C. is liable for 10 percent of the penalties because that is the percentage of indemnity benefits for which we have determined E.M.C. is liable. The Fund is liable for the other 90 percent. We conclude that E.M.C. is liable for total penalties in the amount of $15,084.18. This figure represents a 50-percent penalty ($132.50 per week) for 46³/₇ weeks of temporary total disability from and including June 6, 1994, through April 26, 1995, or $6,151.79; a 50-percent penalty ($132.50 per week) for 62⁴/₇ weeks, from April 27, 1995, to July 7, 1996, or $8,290.71; and $13.25 per week (10 percent of $132.50) for 48³/₇ weeks, from July 8, 1996, through the date of trial of June 11, 1997, or $641.68. The Fund is liable for total penalties in the amount of $5,775.11. This figure represents $119.25 per week (90 percent of $132.50) for 48³/₇ weeks from July 8, 1996, the date it received notice, through June 11, 1997.

The $132.50-per-week ($13.25 from E.M.C. and $119.25 from the Fund) waiting-time penalty is to be ongoing from and after the date of trial up to the date at which past-due benefits payable pursuant to the trial court's award in this case are paid in full.

Miller also assigns that the review panel erred in finding that its modifications of the penalties awarded resulted in a reduction in the amount of the award and precluded Miller from an award of attorney fees on review. This issue was assigned by Miller, but not argued in his brief to this court. Not only must a claimed prejudicial error be assigned, it must also be discussed in the brief of the asserting party; an appellate court will not consider assignments of error which are not discussed in the

brief. *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998); *State v. Sommerfeld*, 251 Neb. 876, 560 N.W.2d 420 (1997). We will not discuss this assignment of error.

Miller is entitled to attorney fees for this appeal pursuant to § 48-125, because he has obtained an increase in the amount of his award and because E.M.C. and the Fund both cross-appealed and failed to obtain any reduction in the amount of Miller's award. We determine $5,000 to be fair and reasonable attorney fees, as Miller's counsel spent over 50 hours on this appeal. E.M.C. is responsible for $500 (10 percent of $5,000) of the fees, and the Fund is responsible for $4,500 (90 percent of $5,000) of the fees.

Pursuant to § 48-125(2), interest on the final award is also to be assessed against E.M.C. and the Fund.

### OPINION OF MARCHISIO

Miller also argues that the review panel erred in affirming the trial court's decision not to consider the opinion of Marchisio as to Miller's loss of earning capacity. The trial court refused to consider the opinion of Marchisio because Miller failed to follow the procedures set forth in the rules of the compensation court for the selection of a vocational rehabilitation evaluator.

The trial court found, without considering the opinion of Marchisio, that there was ample evidence upon which to base the finding that Miller had sustained his burden of showing by a preponderance of the evidence that he is permanently and totally disabled. The review panel affirmed this portion of the trial court's decision, finding that even if such failure to consider Marchisio's opinion was erroneous, it was harmless in light of the otherwise overwhelming evidence of Miller's permanent total disability found by the trial court. We need not decide whether the trial court erred in not considering the opinion of Marchisio. There was other sufficient evidence in the record to show that Miller was permanently and totally disabled, and from this evidence, the trial court concluded that Miller was permanently and totally disabled. Therefore, even if the trial court erred in failing to consider Marchisio's opinion, which we do not decide here, it was harmless error.

## MODIFICATIONS TO MILLER'S HOME

E.M.C. also argues that the review panel erred in affirming the part of the trial court's order which ordered E.M.C. to pay for modifications to Miller's home. E.M.C. relies on *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978), where we held that an injured worker was not entitled to an award for costs of adding a room to his home to enable him to be cared for at his home. Miller relies on *Koterzina v. Copple Chevrolet*, 1 Neb. App. 1000, 510 N.W.2d 467 (1993), where the Court of Appeals held that it was proper for the trial court to order an employer to pay for construction costs to an injured worker's home to make it handicapped-accessible.

Neb. Rev. Stat. § 48-120(1) (Reissue 1993), which is part of the Nebraska Workers' Compensation Act, provides that the employer "shall be liable for all reasonable medical, surgical, and hospital services, including . . . appliances, supplies, prosthetic devices, and medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment."

In *Koterzina v. Copple Chevrolet*, 1 Neb. App. at 1006, 510 N.W.2d at 471, the Court of Appeals distinguished *Spiker v. John Day Co., supra*, by pointing out that the statute in effect at the time of the accident in *Spiker* did not include the language " 'appliances, supplies . . . as and when needed, which are required by the nature of the injury.' " Under § 48-120(1), as it now reads, modifications to an injured employee's home could be considered medical expenses under the appliances or supplies categories if the modifications are "required by the nature of the injury," and if the modifications "relieve pain or promote and hasten the employee's restoration to health and employment." It is clear from the record that the modifications to Miller's home were "required by the nature of the injury." Wunder and Gilles both recommended that certain modifications be made to Miller's home to allow him to function during his recuperative period from his shoulder surgery. Since Miller never had the surgery and was denied the needed treatment by E.M.C., his shoulder is now permanently impaired. Miller has and will continue to have difficulty maneuvering in his own

home. Miller uses his wheelchair more now than he did prior to his work-related injuries and has trouble getting into the shower and even into his home without the modifications.

█ The question becomes whether the modifications "relieve pain or promote and hasten the employee's restoration to health and employment." The terms of the Nebraska Workers' Compensation Act are to be broadly construed to accomplish the beneficent purpose of the act. *Bindrum v. Foote & Davies*, 235 Neb. 903, 457 N.W.2d 828 (1990). In *Canas v. Maryland Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990), we upheld the compensation court's award entitling a worker to recover for the cost of his penile implant. We noted that in a compensation case, compensation is not restricted to physical pain, and that the "pain" suffered by the employee included the mental anguish the employee felt when his injury resulted in impotence, a condition which threatened to destroy his marriage.

In the present case, Miller's pain is caused by the loss of independence to function and to enter and move about his own home. We cannot say that the trial court was clearly wrong in determining that E.M.C. should pay for the modifications to Miller's home.

## CONCLUSION

The review panel did not err in affirming the trial court's award of permanent and total disability benefits to Miller, but did err in affirming the trial court's apportionment of benefits of 20 percent to E.M.C. and 80 percent to the Fund. The correct holding should have been an apportionment of 10 percent to E.M.C. and 90 percent to the Fund. The review panel's award of penalties is modified, and the Fund is liable for penalties as set forth in this opinion. The review panel did not err in affirming the trial court's failure to consider the opinion of Marchisio, nor did it err in affirming the part of the trial court's order that ordered E.M.C. to pay for modifications to Miller's home.

AFFIRMED AS MODIFIED.